JOSEPH ATKINSON, administrator, *vs.* GREENLEAF B. WHITE and another.

SAME, *vs.* JAMES BRIDGE and another.

*Judgment—when it may be pleaded in bar.*

A judgment in an action of trover against the defendants' warrantee, rendered upon a trial involving only the defendants' title to chattels as against that of the plaintiff, is a bar to an action by the plaintiff against the defendants themselves, involving the same issue, and to be supported by the same testimony.

Thus, the owner of a lot of logs conveyed them to the defendants by a mortgage bill of sale, and subsequently, by an absolute bill of sale, to the plaintiff's intestate. Still later, the defendants sold a portion of the logs and warranted the title to one Conner, who converted them; whereupon the plaintiff sued him in trover for their value. At the trial, the only question tried was the strength of the defendants' title under the mortgage as against that of the plaintiff's intestate under the absolute bill, and the defendant recovered judgment. In this action, involving precisely the same question, and depending upon the same testimony; *Held,* That the judgment in favor of Conner was a bar.

THE SECOND case was tried in Kennebec county. The cases are sufficiently stated in the opinion.

*Lancaster* and *Wm. Atkinson*, for the plaintiff.

*J. S. Abbott*, for the defendants.

DANFORTH, J. One J. W. Larry was the owner of certain logs which he sold by a mortgage bill of sale to the defendants. He subsequently sold the same logs to the plaintiff's intestate by an absolute bill of sale. It is admitted that the only question in dispute in this action is whether these defendants, by virtue of their mortgage, acquired a good title to these logs as against the plaintiff's intestate.

After their purchase, these defendants sold a portion of the logs, warranting their title, to one Wm. Conner, who converted the same to his own use, and for so doing, this plaintiff, as administrator, prosecuted an action of trover against him to recover their value. After a full hearing, final judgment was rendered on the merits of the case in favor of the defendant. It is admitted, that, in this last-named case, the only question tried was precisely the same as the one involved in the case at bar, viz., the title of these defendants as against that of the plaintiff's intestate.

This title is fully sustained by the judgment. The present defendants pleaded this judgment in bar, and the presiding judge sustained the plea. Was this ruling authorized by law? That the question involved in each suit is precisely the same, and to be proved by the same testimony is beyond a doubt. It is equally clear that the plaintiff is the same, and that he has had his day in court. He has had a full hearing upon the law and fact involved in the very question he now proposes to try again in another suit. He has had every privilege the law allows him, unless he is entitled to another hearing, simply because he is now attempting to enforce his claim against another defendant in name, indeed, but the same in interest.

Ordinarily judgments have been held conclusive only between parties and their privies, and only when both parties are bound.

But this rule is subject to exceptions; as in the case of an alleged trespass by two persons, when one acts as servant of the other, and by his command.   Such persons are not privies, and yet if the plaintiff fails in his action against one, he is precluded by that judgment from maintaining an action for the same trespass against the other.   *Emery* v. *Fowler,* 39 Maine, 326.

So, too, if an indorser of a note fails in a suit against the sureties, the judgment in their favor will protect them against the suit of any other indorser.   *Dunham* v. *Giles,* 52 Maine, 206.

In *Emery* v. *Fowler,* above cited, on page 329, Shepley, C. J., says: ' To permit a person to commence an action against the principal, and to prove the acts alleged to be trespasses, to have been committed by his servant acting by his order, and to fail upon the merits to recover, and subsequently to commence an action against that servant, and to prove and rely upon the same acts as a trespass, is to allow him to have two trials for the same cause of action, to be proved by the same testimony.'   In *Dunham* v. *Giles,* above cited, on page 208, Appleton, C. J., says: ' Their (the sureties) rights and liabilities have been once judicially determined in a suit by the indorser of the note against them, and cannot again be called in controversy.   If it were not so, they might be harrassed by as many suits as there should happen to be indorsers.'   These cases, and others of a like character, which might be cited, seem to settle the principle that where a party has once tried a question in one suit, he shall not, without regard to mutual estoppel, again try the same question, involving the same testimony in another suit.   On this principle the ruling in the case at bar is right.   The defendants here were the defendants in interest in the suit against Conner.

In that suit, the validity of their title was the only question involved.   Precisely the same question, depending upon the same testimony, is in dispute in this.   The plaintiff being the same in both suits, if the judgment in the former is not conclusive upon him, he is allowed ' two trials for the same cause of action, to be proved by the same testimony.'

There is a broad distinction between the case at bar and those cases against joint trespassers, and those against principals and sureties in contracts. In the latter, though the trespass or contract may be the same, yet the liability of the several parties may rest upon entirely different principles, and sustained by different testimony, while in the former the question at issue involves the same principles, and the same testimony as those settled in the judgment pleaded, while the fact that the defendants are warranted of their title, is immaterial to their case.

But is it quite clear that the defendants in this suit were not parties to the former, so far as to make the estoppel mutual? They were parties in interest, and as such had a right to assume the defense of that, and be heard therein. Besides, the nominal defendant in that had a legal right to notify them of its pendency, and in either case they would be bound by the judgment, or, if Conner chose to defend the suit against him, it was for the benefit of these defendants, and we now find them adopting that defense, whether their own or Conner's, and attempting to avail themselves of it in the defense of this suit. It is true that the case does not find that they actually assumed that defense, nor does it find that they did not; while, as a matter of inference, all the facts lead to the conclusion that they did.

But if we hold that the old principle, that 'estoppels must be mutual,' is applicable to this case, ought we to be bound by it any longer?

That law was adopted when parties could not be witnesses, and from a very tender care of suitors, lest by possibility injustice might be done. For it is said, and this appears to be the only reason on which the law is founded, that 'if the adverse party was not also a party to the judgment offered in evidence, it may have been obtained upon his own testimony; in which case, to allow him to derive a benefit from it would be unjust.'

Since the statute, making parties and all interested persons witnesses, this foundation has been taken away. No danger of injustice from that source now exists; and the reason of the law having

ceased, why should the law be retained ?   It should be remembered that this is not a question in which these parties alone have an interest.  ' Other suitors, waiting for their turn should not be delayed by repeated trials of the same question, not required to secure justice.   Public policy also requires that there should be an end of litigation.   If this matter has been once adjudicated upon, even the defendants themselves cannot waive that adjudication if they would.   It has become the law of the case, and binding upon all parties who have had an opportunity to be heard thereon.

We can see no possible ground of suspicion even of injustice to the plaintiff in holding the former judgment against him conclusive.

*Exceptions overruled.*

*Nonsuit confirmed.*

CUTTING, WALTON, DICKERSON, and BARROWS, JJ., concurred. APPLETON, C. J., and KENT, J., did not concur.


CUTTING, J.   It appears that both parties claim title to the lumber in controversy indirectly under one J. W. Larry, who on April 6, 1850, mortgaged this and other lumber, being his whole previous winter's operation, to White & Norris, who manufactured a part at Kendall's Mills in 1851.   Sold a part to Wm. Conner, Sept. 27, 1851, and the remainder to Bridge & Sturgis, the defendants, April 2, 1852.

That the same Larry, on Oct. 10, 1850, subsequent to his mortgage to White & Norris, conveyed the same lumber to one Parker Sheldon, who on June 6, 1851, sold the same 'to Parker C. Sheldon, the plaintiff's intestate.

Had the mortgage to White & Norris been duly recorded, many of the questions which have since arisen, might have been avoided, greatly to the advantage of the many litigating defendants.   But in the suit *Parker Sheldon* (the official predecessor of the present plaintiff) v. *William Conner*, 48 Maine, 584, it was decided that actual knowledge was not equivalent to a record; hence arises the controversy as to the actual possession under the mortgage, and in

a subsequent trial of the same case the plaintiff probably would have prevailed, had not the defendant, Conner, proved such possession to the satisfaction of the jury.

In 56 Maine, 546, a petition for a review of the aforesaid action was presented to the court, alleging that one William Lisherness, a witness on the former trial, had testified falsely as to the possession taken under the mortgage. The opinion of the court, drawn by Judge DICKERSON, recites very fully the processes and proceedings previously had, and comes to the conclusion that the petition should be denied. This case is referred to, as it may have some bearing upon the present decision; and it will be perceived, that the petition was denied principally upon the ground of inexcusable neglect in the discovery of the alleged new testimony.

In *Atkinson* v. *White* (a case not as yet reported), the defendants plead in bar the judgment in *Atkinson* v. *Conner*, and that plea was sustained by a majority of this court.

In the case at bar, there is substantially the same plea and an admission by the plaintiff of its truth; ' but he claimed that at the trial of the action against Conner, William Lisherness, a witness for defendant, was guilty of perjury.' And this claim is all that distinguishes the one case from the other.

But so long as the judgment in the Conner case stands, so long will stand these pleas in bar. The petition for a review was aimed at the Conner judgment, but failed, and that judgment remains intact, and so must the pleas. This is the only question of law which this case presents, and, according to the agreement of the parties, there must be                    *Judgment for the defendants.*

WALTON, DICKERSON, BARROWS, and TAPLEY, JJ., concurred.