Carol **HOSSLER**, Individual and Next Friend of William and Kevin Dows

v.

John J. **BARRY**, Administrator of the Estate of Margaret L. Barry.

Supreme Judicial Court of Maine.

June 26, 1979.

Preti, Flaherty & Beliveau by Thomas A. Cox, Jonathan S. Piper (orally), Portland, for plaintiff.

Hewes, Culley & Feehan by Richard D. Hewes (orally), Portland, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

DELAHANTY, Justice.

Following a June 13, 1977 jury trial in the Superior Court, York County, a verdict of $25,500 was returned for the plaintiff, Carol Hossler, as next friend for her children, William and Kevin Dows. This appeal, brought by the defendant, John Barry, as administrator of his wife's estate, challenges the presiding Justice's rulings on matters relating to the conflict of laws and the use of collateral estoppel.

We sustain the appeal.

On July 2, 1969, an accident occurred in Kittery, Maine involving two automobiles. The defendant was a passenger in a vehicle driven by his wife while William and Kevin Dows were riding in the other vehicle operated by their father, Ray Dows. The Barrys were life-long residents of Massachusetts. Carol Hossler and Ray Dows, married at the time of the accident, were apparently living in Connecticut with their children.

On March 29, 1971, John Barry commenced an action in the Superior Court, York County, against Ray Dows for personal injuries allegedly sustained by his wife and him. Barry's wife died shortly thereafter, and on May 17, 1971 he was appointed administrator of her estate, which estate was probated in Massachusetts. In January of 1972, Ray Dows brought an action against Margaret Barry's estate seeking compensation for personal injuries, property damage to his automobile, and his expenses for medical and hospital services rendered to his children. The two actions were consolidated for trial, and on August 14, 1973 a jury found Dows thirty percent negligent and the defendant's decedent wife seventy percent liable. Judgment was entered and satisfied.

The present action, commenced by Carol Hossler on May 27, 1975, sought damages against the defendant's decedent wife for the children's pain and suffering and for the plaintiff's nursing services.[1] The parties stipulated that on the date of the accident the decedent carried liability insurance whose limit exceeded the amount being sought. Raising the statute of limitations as an affirmative defense, the defendant moved to dismiss because the time for commencing suit against an estate had expired under the laws of both Massachusetts (Mass.Gen.Laws Ann. ch. 197, § 9) and Maine (18 M.R.S.A. § 2651). The presiding Justice denied the motion on the ground that neither non-claim statute barred the action as long as there was insurance coverage available to satisfy any judgment that would be obtained. Further, the court granted the plaintiff's motion for partial summary judgment on the question of liability based upon the previous adjudication of this issue.

### I. Conflict of Laws

Advancing various interests that Massachusetts has with the instant suit and relying upon *Beaulieu v. Beaulieu*, Me., 265 A.2d 610 (1970), the defendant asserts that the Massachusetts limitation period should have been applied by the court below. According to the defendant, the applicable statute of limitations is found in Massachusetts' non-claim statute, Mass.Gen.Laws Ann. ch. 197, § 9, which at the time of the decedent's death provided that all suits against an estate had to be commenced within one year from the time the administrator first gave his performance bond. This suit, commenced more than four years after the defendant was appointed administrator, was therefore untimely.

As would be expected, the plaintiff, mustering all of Maine's relevant contacts with the parties and the accident, asserts that under a *Beaulieu* analysis Maine's substantive and procedural laws would control the

---

1. By directed verdict at the commencement of trial, the presiding Justice eliminated the nurs-

ing services claim. The propriety of his ruling is not before us in this appeal.

suit. This action, commenced within the six-year period contained in 14 M.R.S.A. § 752, was timely brought.

Prior to *Beaulieu v. Beaulieu, supra,* there is little doubt that Maine's limitation period would have controlled the suit.

Viewing the non-claim provision as a statute of limitations, the traditional rule is that Maine *as the forum* of the suit would apply its own limitation period. *Alropa Corp. v. Britton,* 135 Me. 41, 188 A. 722 (1936). The theory underlying the rule is that a statute of limitations ordinarily affecting only the remedy is considered procedural and is thus subject to the law of the forum. *Miller v. Fallon,* 134 Me. 145, 183 A. 416 (1936). As set forth in *Pringle v. Gibson,* 135 Me. 297, 301, 195 A. 695, 697 (1937), a case whose lex loci delicti doctrine was admittedly abandoned in *Beaulieu v. Beaulieu, supra,*

> it is a general and well-settled rule that remedies are regulated and governed by the lex fori, [citations omitted], and that included in the procedural policy of the state are statutes of limitations . . ..

■ Two exceptions to this general rule have been recognized, one statutory and the other common law. To prevent forum shopping and the interminable tolling of the statute of limitations, *Developments, Statutes of Limitations,* 63 Harv.L. Rev. 1177, 1262–64 (1950), borrowing statutes have been enacted the effect of which, when applicable, is to enable the forum to borrow and use the statute of limitations of another state in determining the timeliness of an action. Our borrowing statute, 14 M.R.S.A. § 866, reads in pertinent part:

No action shall be brought by any person whose cause of action has been barred by the laws of any state, territory or country while all the parties have resided therein.

For the borrowing statute to apply, "[t]he parties must reside in the same state at the same time." *Frye v. Parker,* 84 Me. 251, 254, 24 A. 844 (1892). Since the plaintiff never resided in Massachusetts, the state where the defendant resided, 14 M.R.S.A. § 866 could not have been triggered.

■ A second exception is where a statute in a foreign jurisdiction has created the liability sought to be enforced in the forum. In such circumstances, if passage of the appropriate foreign limitation period bars the right and not merely the remedy, then an action to enforce that liability cannot be maintained in the forum. *See Pringle v. Gibson, supra; Lamberton v. Grant,* 94 Me. 508, 48 A. 127 (1901).

■ The plaintiff's suit seeking damages for pain and suffering was not predicated upon foreign statutory enactment without which no action could have been maintained.[2] Unlike an action for wrongful death which is purely statutory, *Hammond v. Lewiston, Augusta and Waterville Street Railway,* 106 Me. 209, 76 A. 672 (1909), the instant suit rests upon common-law principles. We are aware of the traditional rule that a foreign administrator or executor can neither sue nor be sued in the courts of another state. *Fort Fairfield Nash Co. v. Noltemier,* 135 Me. 84, 189 A. 415 (1937). However, whatever authority is needed to abrogate this common-law principle is found in our long-arm statute, 14 M.R.S.A. § 704–A,[3] and our non-resident motorist

2. In this regard, it has been flatly asserted that a non-claim statute has no extra-territorial effect. *Propst v. Fisher,* 313 F.2d 248, 249 (6th Cir. 1963); *Brooks v. National Bank of Topeka,* 251 F.2d 37, 43 (8th Cir. 1958); *Hagan v. Lantry,* 338 Mo. 161, 170, 89 S.W.2d 522, 527 (1935). *But see Wimpfheimer v. Goldsmith,* 298 A.2d 778 (Del.Ch.1972).

3. Section 704–A of 14 M.R.S.A. provides in part:

2. Causes of action. Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated in this section, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

. . . . .

B. Doing or causing a tortious act to be done, or causing the consequences of a tortious act to occur within this State . . ..

statute, 29 M.R.S.A. § 1911,[4] the constitutionality of which the defendant does not challenge.

The question now arises whether *Beaulieu v. Beaulieu, supra,* wrought any significant change to the hitherto well-established principle and exceptions concerning the statute of limitations. We think not.

*Beaulieu v. Beaulieu* eschews any mechanical approach to choice-of-law questions. The more flexible methodology under *Beaulieu* stresses a comparison of the relative contacts of the forum and other interested states to "[give] controlling effect to the law of the state which has the greatest contact or concern with, or interest in, the specific issue creating the choice-of-law problem before the court . . .." *Id.* at 617.

■ The primary purpose of the statute of limitations is to keep stale claims out of court. *Williams v. Ford Motor Co.,* Me., 342 A.2d 712 (1975). It is an integral part of the genuinely "procedural" rules relating to the commencement, maintenance, and prosecution of a suit. Restatement (Second) of Conflict of Laws § 122, Comment a (1971). The forum's interest in applying such local rules relates primarily to practicality, convenience, and the proper administration of justice. These reasons generally, although not invariably, outweigh any sister-state interest in the matter even where, as here, the outcome hangs in the balance. *Id.* Accordingly, the Restatement (Second), *supra* at §§ 142–43, adopts as a general proposition the pre-*Beaulieu* conflict rules concerning the statute of limitations.

■ We recognize that anytime suit is permitted against a foreign administrator or executor, there is a potential for interference with the administration of an estate. Massachusetts has a not insubstantial interest in having its estates distributed in a prompt and orderly fashion. *Doyle v. Moylan,* 141 F.Supp. 95 (D.Mass.1956). By confining recovery to the limits of the lia-

bility insurance, an asset of the decedent not subject to distribution, the presiding Justice ensured that the administration of the decedent's estate would not be unduly disturbed. *See Brooks v. National Bank of Topeka, supra.*

We hold that under these circumstances Maine's statute of limitations controls the suit.

The defendant has conceded that if Maine's statute of limitations applies then the appropriate period is the six-year statute, 14 M.R.S.A. § 752, rather than the one-year statute, 18 M.R.S.A. § 2651. Proceeding upon this not unreasonable assumption, *see Svenska Handelsbanken v. Carlson,* 258 F.Supp. 448, 451 (D.Mass.1966), we find the plaintiff's suit timely brought.

## II. Collateral Estoppel

Prior to trial, the plaintiff, relying upon collateral estoppel, moved for summary judgment under M.R.Civ.P. 56(d). Because the defendant's liability had previously been established, the presiding Justice granted partial summary judgment thereby limiting the issue at trial to William's and Kevin's damages for pain and suffering. On appeal, the parties argue over the continued viability of mutuality of estoppel. For his part, the defendant wishes to retain this long-standing doctrine which holds that only a party to a prior adjudication or a person in privity with a party can invoke collateral estoppel. Plaintiff, on the other hand, argues that even though the children were not parties or privies to the prior suit, they should not be precluded from relying on the earlier judgment. Rather, plaintiff urges the Court to abandon the doctrine because it "does not comport with modern theories of jurisprudence."

■ We essentially agree with the plaintiff and conclude that the doctrine of mutuality of estoppel should no longer govern the application of collateral estoppel in the courts of this State.

> If the defendant is deceased, service may be made in the same manner upon his personal representative . . . ..

4. Section 1911 of 29 M.R.S.A. states in pertinent part:

■ Under the existing doctrine of collateral estoppel, when an essential fact or question is actually litigated on the merits and determined by a valid final judgment, the determination is conclusive between the same parties and their privies on a different cause of action. *Chandler v. Dubey*, Me., 378 A.2d 1096 (1978); *Sevigny v. City of Biddeford*, Me., 344 A.2d 34 (1975). The purpose of collateral estoppel is to prevent harassing and repetitious litigation, to avoid inconsistent holdings which lead to further litigation, and to give sanctity and finality to judgments. *See Cianchette v. Verrier*, 155 Me. 74, 151 A.2d 502 (1959).

■ Mutuality of estoppel, an aspect of collateral estoppel, requires the estoppel to be mutual; viz., unless both parties or privies in a subsequent suit are bound by a judgment in a prior case, neither party or privy may rely upon the prior judgment. *Biddle & Smart Co. v. Burnham*, 91 Me. 578, 40 A. 669 (1898). "Both the litigants must be alike concluded, or the proceedings cannot be set up as conclusive upon either." *Id.* at 581, 40 A. at 670. The doctrine was premised on the belief that it would be fundamentally unfair to allow a party who was an entire stranger to the first suit to use that judgment in a subsequent action since, as a stranger, the judgment in the first suit could not be used against him.[5] As stated in *Biddle & Smart Co. v. Burnham, supra*, which first adopted mutuality in this jurisdiction,

> [i]n other words, if the rule were otherwise, a decision favorable to the claimant in any case would only be decisive of that case, while an adverse decision would operate as an estoppel against him in suits by any number of other creditors who had risked nothing in the determination of the previous cases. As was said by the court in *Shulze's Appeal*, 1 Pa.St. 251, a case very similar to this in principle: "His position would have been unequal and disastrous, if a verdict in his favor would have given him no more than a single

point, while a verdict against him would have lost him the game." *Id.* at 582, 40 A. at 670.

For a more contemporary expression of the same concern, *see* Currie, *Mutuality of Estoppel: Limits of Bernhard Doctrine*, 9 Stan.L.Rev. 281 (1957).

At tension with the mutuality rule, however, was another principle stressing a different notion of fairness. Under that view, while every party was entitled to his day in court there was no tenable reason why a litigant should have more than one full and fair opportunity for judicial resolution of the same issue. Indeed, this idea surfaced in the Law Court more than twenty-five years prior to *Biddle* in the case of *Atkinson v. White*, 60 Me. 396, 400 (1872).

> [W]hy should [mutuality of estoppel] be retained? It should be remembered that this is not a question in which these parties alone have an interest. Other suitors, waiting for their turn should not be delayed by repeated trials of the same question, not required to secure justice. Public policy also requires that there should be an end of litigation. If this matter has been once adjudicated upon, even the defendants themselves cannot waive that adjudication if they would. It has become the law of the case, and binding upon all parties who would have had an opportunity to be heard thereon.

Although this broad language of *Atkinson* was limited by *Biddle*, it did not lay to rest the criticism of the mutuality rule. Indeed, even prior to *Atkinson*, mutuality was extensively criticized. No less a jurist than Jeremy Bentham found the doctrine devoid of reason and stated that it was "a maxim which one would suppose to have found its way from the gaming-table to the bench." 7 Works of Jeremy Bentham 171 (J. Bowring ed. 1843), *quoted in Zdanok v. Glidden Co.*, 327 F.2d 944, 954 (2d Cir.), *cert. denied*, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964).

---

5. Due process prevents a judgment being used against a litigant who was neither a party or a privy to a prior suit because that individual never had an opportunity to be heard. *Park-*

*lane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.7, 99 S.Ct. 645, 649 n.7, 58 L.Ed.2d 552, 559 n.7 (1979).

More recently, mutuality has come under widespread attack led by Justice Traynor's landmark decision of *Bernhard v. Bank of California*, 19 Cal.2d 807, 122 P.2d 892 (1942).

> No satisfactory rationalization has been advanced for the requirement of mutuality. Just why a party who was not bound by a previous action should be precluded from asserting it as res judicata against a party who was bound by it is difficult to comprehend. *Id.* at 812, 122 P.2d at 895.

Rejecting a per-se mechanical application of the mutuality doctrine, *Bernhard*, instead, listed pertinent criteria for determining the validity of a prior judicial determination in a subsequent suit. "Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?" *Id.* at 813, 122 P.2d at 895.

Since *Bernhard*, the doctrine of mutuality has been substantially eroded when used defensively, *i. e.*, by a defendant in a second suit against a plaintiff who previously litigated the same issue and lost against another defendant. In approving the defensive use of collateral estoppel, the United States Supreme Court stated in *Blonder-Tongue Laboratories v. University Foundation*, 402 U.S. 313, 325, 91 S.Ct. 1434, 1441, 28 L.Ed.2d 788, 797 (1971), *quoting Bruszewski v. United States*, 181 F.2d 419, 421 (3rd Cir.), *cert. denied*, 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950):

> [N]o unfairness results here from estoppel which is not mutual. In reality the argument [against abandoning mutuality] is merely that the application of res judicata [under such circumstances] makes the law asymmetrical. But the achievement of substantial justice rather than symmetry is the measure of the fairness of the rules of res judicata.

For other courts approving of the defensive use of collateral estoppel, *see Standage Ventures, Inc. v. State*, 114 Ariz. 480, 562 P.2d 360 (1977); *Miller v. City of Bakers-field*, 256 Cal.App.2d 820, 64 Cal.Rptr. 469 (1967); *McGary v. Rocky Ford National Bank*, 523 P.2d 479 (Colo.App.1974); *Morneau v. Stark Enterprises, Ltd.*, 56 Haw. 420, 539 P.2d 472 (1975); *Schneberger v. U. S. Fidelity & Guaranty Co.*, 213 N.W.2d 913 (Iowa 1973); *Home Owners Federal Savings & Loan Association v. Northwestern Fire & Marine Insurance Co.*, 354 Mass. 448, 238 N.E.2d 55 (1968); *Gerhardt v. Miller*, 532 S.W.2d 852 (Mo.App.1975); *Lougee v. Beres*, 113 N.H. 712, 313 A.2d 422 (1973); *Anco Mfg. & Supply Co. v. Swank*, 524 P.2d 7 (Okl.1974); *Sample v. Chapman*, 7 Wash. App. 129, 497 P.2d 1334 (1972). For a thorough discussion, *see* Annot., 31 A.L.R.3d 1044 (1970).

While the defensive use of collateral estoppel has achieved general judicial recognition, courts have been more reluctant to permit its use offensively, such as in the case at bar where a plaintiff seeks to estop a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff in a prior suit.

The United States Supreme Court summarized these reasons against offensive collateral estoppel in *Parklane Hosiery Co. v. Shore, supra*, a decision in which it ultimately approved of its use. When used defensively, collateral estoppel encourages a plaintiff to join all potential defendants in a single action since if he sues and loses he will not be entitled to a second bite at the apple. The offensive use, by contrast, does not promote judicial economy since a plaintiff has every incentive to avoid suit until a prior plaintiff has obtained a judgment against the defendant. "Thus offensive use of collateral estoppel will likely increase rather than decrease the total amount of litigation, since potential plaintiffs will have everything to gain and nothing to lose by not intervening in the first action." *Parklane Hosiery Co. v. Shore*, 439 U.S. at 330, 99 S.Ct. at 651, 58 L.Ed.2d at 561.

Another reason against permitting the offensive use of collateral estoppel is that it may be unfair to the defendant in many

circumstances as where the first suit is for a relatively small sum and future suits are not foreseeable. In such circumstances, the defendant may have had little incentive to defend vigorously.

Courts are divided over whether to permit the offensive use of collateral estoppel. For cases permitting its use, *see Zdanok v. Glidden Co., supra; State v. Capital Airlines, Inc.,* 267 F.Supp. 298 (D.Md.1967); *Gelblum v. Bloom,* 21 Md.App. 406, 319 A.2d 546 (1974); *Desmond v. Kramer,* 96 N.J.Super. 96, 232 A.2d 470 (1967); *B. R. DeWitt, Inc. v. Hall,* 19 N.Y.2d 141, 278 N.Y.S.2d 596, 225 N.E.2d 195 (1967); *Bahler v. Fletcher,* 257 Or. 1, 474 P.2d 329 (1970). For cases in which its use was disapproved, *see Spettigue v. Mahoney,* 8 Ariz.App. 281, 445 P.2d 557 (1968); *Nevarov v. Caldwell,* 161 Cal.App.2d 762, 327 P.2d 111 (1958); *Adamson v. Hill,* 202 Kan. 482, 449 P.2d 536 (1969); *Albernaz v. City of Fall River,* 346 Mass. 336, 191 N.E.2d 771 (1963); *Reardon v. Allen,* 88 N.J.Super. 560, 213 A.2d 26 (1965). *See generally* Annot., 31 A.L.R.3d 1044 (1970).

■ We are persuaded that the reasons justifying collateral estoppel would generally be advanced by permitting its use offensively on a case-by-case basis. In the abstract, there is no legitimate reason to permit a defendant who has already thoroughly and vigorously litigated an issue and lost the opportunity to relitigate the identical question, already once decided, simply because he now faces a different plaintiff who for due process reasons could not be adversely bound by the prior judgment. The public interest demands an end to the litigation of the same issue. Principles of finality, certainty, and the proper administration of justice suggest that a decision once rendered should stand unless some compelling countervailing consideration necessitates relitigation.

It may be that in some cases it would be particularly unfair to the defendant if the estoppel were applied. If that is true, the court need not sanction its use; collateral estoppel is, after all, a flexible doctrine meant to serve the ends of justice not to subvert them. *Bahler v. Fletcher, supra.*

Many factors have been considered in determining whether the defendant has had a full and fair opportunity to litigate in the prior suit including the size of the claim, *Parklane Hosiery Co. v. Shore, supra,* the forum of the prior litigation, *Zdanok v. Glidden Co., supra,* whether the issue was a factual or a legal one, *id.,* the foreseeability of future suits, *id.,* the extent of the previous litigation, *United States v. United Air Lines,* 216 F.Supp. 709 (E.D.Wash.1962), *aff'd* as to res judicata *sub nom. United Air Lines v. Wiener,* 335 F.2d 379 (9th Cir. 1964), the availability of new evidence, *id.,* the experience of counsel, *Graves v. Associated Transport, Inc.,* 344 F.2d 894 (4th Cir. 1965), indications of a compromise verdict, *Taylor v. Hawkinson,* 47 Cal.2d 893, 306 P.2d 797 (1957), procedural opportunities available in the second suit that were unavailable in the first. *See* Note, *Collateral Estoppel: The Demise of Mutuality,* 52 Cornell L.Q. 724, 728–29 (1967); Annot., 31 A.L.R.3d, *supra* at 1052–53.

■ If a party can in fact demonstrate prejudice, then collateral estoppel ought not to be a bar to relitigation. However, our adversarial system is predicated on the notion that a just result will ordinarily emerge; while this system is not infallible, it is generally fair. The burden to demonstrate prejudice therefore rests squarely on the party resisting collateral estoppel. *Schwartz v. Public Administrator,* 24 N.Y.2d 65, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969).

A more serious concern is that offensive collateral estoppel does little to advance judicial economy. *See* Kimmel, *The Impacts of Defensive and Offensive Assertion of Collateral Estoppel by a Nonparty,* 35 Geo.Wash.L.Rev. 1010 (1967). Insofar as it discourages plaintiffs from bringing all of their claims against a defendant at one time, it subjects the defendant to the possibility of repetitious and vexatious litigation, thereby undercutting one of the purposes of collateral estoppel. A presiding Justice should carefully evaluate the reasons why a now plaintiff did not join in and have his

claim adjudicated in the first action. If it was merely to lie in ambush and wait for a favorable judgment, he should not be permitted to use that judgment as a sword.

█ In the present case, the plaintiff could have joined or intervened in the prior suit with little difficulty. Nevertheless, there are special circumstances which excuse the plaintiff's failure to act. The real parties in interest, William and Kevin, were minors during the pendency of the first action which was brought by their father for his benefit. No privity exists between parent and child, and a suit by the former cannot extinguish or prejudice any existing cause of action in the latter. *Arsenault v. Carrier*, Me., 390 A.2d 1048, 1051 (1978), and concurring opinion of Dufresne, A.R.J., at 1055. Similarly, the children should not now be charged with the failure of their father or next friend to have prosecuted their claims in the prior suit.

On the record before us, we are unable to determine whether the defendant had a full and fair opportunity to litigate in the first action. We would ordinarily be constrained to invoke the rule that "[w]hen an inadequate record is presented to the Law Court to support an appeal, such appeal must fail." *Berry v. Berry*, Me., 388 A.2d 108, 109 (1978). Here, however, the defendant could not reasonably have foreseen either that the presiding Justice would abrogate a long-standing common-law rule or its reformulation on appeal in terms of a full and fair opportunity to litigate. Under these rather unique circumstances, defendant should have the opportunity to demonstrate prejudice if any in fact existed.

In summary, we hold that lack of mutuality of estoppel will no longer prevent the application of collateral estoppel. Where no unfairness results, a party or privy to a first suit will be bound in subsequent litigation with third parties by issues necessarily decided in the prior case.[6]

Our foregoing analysis directs that the defendant be afforded an opportunity to demonstrate that he lacked a full and fair opportunity to litigate the issue of his negligence in the prior suit.

The entry is:

Appeal sustained.

Case remanded to the Superior Court for further proceedings consistent with this opinion.

6. In this regard, valuable guidance is provided by the Restatement (Second) of Judgments § 88 (Tent. Draft No. 2, 1975) which states:

A party precluded from relitigating an issue with [the same opposing party as in the first action] is also precluded from doing so with another person unless he lacked full and fair opportunity to litigate the issue in the first action or unless other circumstances justify affording him an opportunity to relitigate the issue. [Among the circumstances to be considered are] whether:

(1) Treating the issue as conclusively determined would be incompatible with an applicable scheme of administering the remedies in the actions involved;

(2) The forum in the second action affords the party against whom preclusion is asserted procedural opportunities in the pre*sentation* and determination of the issue that were not available in the first action and that might likely result in the issue's being differently determined;

(3) The person seeking to invoke favorable preclusion, or to avoid unfavorable preclusion, could have effected joinder in the first action between himself and his present adversary;

(4) The determination relied on as preclusive was itself inconsistent with another determination of the same issue;

(5) The prior determination may have been affected by relationships among the parties to the first action that are not present in the subsequent action, or was based on a compromise verdict or finding;

(6) Treating the issue as conclusively determined may complicate determination of issues in the subsequent action or prejudice the interests of another party thereto;

(7) Other circumstances make it appropriate that the party be permitted to relitigate the issue.