David R. BAKER

v.

ASSOCIATED TRANSPORT, INC. and
Seaboard Surety Company.

Supreme Judicial Court of Maine.

Feb. 14, 1980.

Preti & Flaherty by Keith A. Powers (orally), Portland, for plaintiff.

Robinson & Kriger by Sarah Allison Thornton (orally), Portland, for defendants.

Before McKUSICK, C. J., and WERNICK, GODFREY and NICHOLS, JJ.

WERNICK, Justice.

The Workers' Compensation Commission, ruling on petitions brought in May and October, 1977, by a worker, David R. Baker, ordered Seaboard Surety Company (Seaboard) to pay Baker all of the medical expenses and attorney's fees incurred by him as a result of an injury he sustained on February 5, 1976 in the course, and arising out, of his employment with Associated Transport, Inc. (Associated).

Seaboard had provided a bond as security to enable Associated to become a self-insurer under the Workers' Compensation Act, more particularly, in accordance with 39 M.R.S.A. § 23(2).[1] The Commission's order

1. Section 23 authorizes an employer to be an individual self-insurer as follows:

"§ 23. Insurance by assenting employer; requirements as to self-insurers

against Seaboard purported to operate directly against it as the "guarantor" of Associated's liability to Baker for workers' compensation benefits. The order was made in the face of a defense asserted by Seaboard that its bond securing Associated had expired, without renewal, several months before Baker sustained his February 5, 1976 injury. The Commission rejected this defense on the ground that Seaboard had "waived" it.

Seaboard has appealed to this Court from the pro forma judgment of the Superior Court entered on this decision of the Commission.

We conclude that we must sustain the appeal, vacate the pro forma judgment of the Superior Court and remand the case to the Commission for further proceedings.

Prior to the injury of February 5, 1976 at issue, Baker suffered an injury to his back on January 20, 1975. This injury had also been sustained in the course, and arising out, of his employment with Associated, and Baker had been paid compensation for the incapacity, as well as the medical expenses, attributable to the injury.

The uncertainty regarding whether the second injury might be related to his earlier 1975 injury led Baker to file, in May of 1976, two petitions with the Commission: (1) a Petition for Further Compensation as to the 1975 injury and (2) a Petition for an Award of Compensation as to the February 1976 injury (to be applicable if the 1976 injury was found to be a new injury independent of that suffered in 1975).

While these petitions were pending, Seaboard's supervisor for workers' compensation claims twice wrote to the Commission stating that Seaboard would be responsible regarding the claims made by the petitions. In addition, Seaboard paid Baker for a part of the attorney's fees that he had incurred in connection with the pending petitions. Seaboard so acted because Associated, Baker's employer, had gone into bankruptcy during the period between February 5, 1976 and Baker's filing of his 1976 petitions.

After several hearings on the petitions, the Commission, on February 24, 1977, issued its decision. The Commission found that Baker's February 1976 injury had been incurred in the course, and arising out, of his employment with Associated and that it was a new injury totally independent of Baker's 1975 work-related injury. On this basis, the Commission made an order directly against Seaboard, as the "guarantor" of Associated liability to Baker for workers' compensation benefits, that Seaboard pay Baker compensation for his incapacity resulting from this new and independent 1976 injury. The Commission also dismissed Baker's Petition for Further Compensation as to his 1975 work-related injury.

Seaboard complied with the Commission's order and paid Baker for his incapacity as it existed during 1976. Seaboard also paid to Baker a portion of the medical expenses that he had incurred as a result of the February 5, 1976 injury.

Subsequently, in February or March of 1977, Seaboard informed Baker that it had discovered that its bond securing Associated had expired on August 5, 1975, prior to Baker's 1976 injury, and that Seaboard would therefore make no further payments in regard to that 1976 injury.

Because of Seaboard's position Baker, in May and October, 1977, brought petitions

"Every employer subject to this Act shall secure such compensation and other benefits to his employees in one or more of the following ways:

\* \* \* \* \* \*

"2. By furnishing satisfactory proof to the commission of his solvency and financial ability to pay the compensation and benefits, and deposit cash, satisfactory securities or a security bond, in such sum as the commission may determine; such bond to run to the Treasurer of State and his successor in office, and to be conditional upon the faithful performance of this Act relating to the payment of compensation and benefits to any injured employee. In case of cash being deposited, it shall be placed at interest by the Treasurer of State, and the accumulation of interest on said cash or securities so deposited shall be paid to the employer depositing the same. The commission may at any time in its discretion deny to an employer the right to continue in the exercise of the option granted by this section."

seeking payment in full of additional medical expenses and attorney's fees incurred by him as a result of his February 1976 injury. Seaboard filed answers to these petitions in which, for the first time in any proceedings before the Commission, it asserted the defense that "[a]s of August 5, 1975, the bond of . . . Seaboard Surety, had expired without renewal." Seaboard made a showing before the Commission that in February 1977 it discovered that an error in its internal record-keeping processes had led it to believe that the latest bond it had provided as security for Associated would expire on May 28, 1976 instead of, as was the correct date of expiration, August 5, 1975. Seaboard also showed that when the expiration date of any current bond for Associated was approaching, it was its practice to write to the insurance representative of Associated inquiring whether Associated wanted a new bond issued. Because of the error in its records as to the expiration date of the last bond issued effective August 5, 1974, Seaboard made no written inquiry of Associated for the issuance of a new bond to cover the period from August 5, 1975 to August 5, 1976. Associated itself never requested that such new bond be issued.

Despite this showing of an actual mistake by Seaboard, the Commission adjudicated Seaboard liable to Baker regarding the claims made in Baker's May and October, 1977, petitions, on the ground that Seaboard had "waived any defense it may have to liability under its bond running to Associated Transport, Inc." Accordingly, the Commission ordered Seaboard, as "guarantor . . . for Associated Transport, Inc.", to pay Baker all of the medical expenses and attorneys fees, remaining unpaid, which Baker had incurred as a result of his February 5, 1976 work-related injury.

### 1.

■ We agree with Seaboard that the Commission erred in holding it liable to pay Baker on the basis of a genuine "waiver", that is, that Seaboard had *intentionally* re-

linquished a *known* right. *See T. M. Oil Company v. Barnes*, Me., 402 A.2d 857, 859 (1979); *Pino v. Maplewood Packing Company*, Me., 375 A.2d 534, 538–39 (1977). When, after Associated went bankrupt, Seaboard wrote to the Commission that it would be responsible regarding Baker's 1976 petitions and when Seaboard paid Baker pursuant to the Commission's decision on his 1976 Petition for an Award of Compensation, Seaboard was acting under the mistaken apprehension that it had a bond in full force and effect at the time of Baker's February 1976 injury. Plainly, then, since Seaboard acted under a mistake as to the actual facts, it cannot be held to have *intentionally* extended the effectiveness of its bond *knowing* that the bond had already expired and was no longer in force.

### 2.

■ Even if we interpret the Commissioner's use of the word "waiver" to be his way of invoking the independent doctrine of equitable estoppel (estoppel in pais) to bar Seaboard from denying liability to Baker as to compensation benefits due him because of his February 5, 1976 injury, the record discloses no rational basis for such an estoppel against Seaboard. An essential element of equitable estoppel, as it could apply to this case, is that the worker, Baker, must be shown to have changed his position to his detriment in justifiable reliance on Seaboard's having acted toward him as if its bond were still in effect as of February 5, 1976. *Roberts v. Maine Bonding & Casualty Company*, Me., 404 A.2d 238 (1979). Here, the record shows only that because of Seaboard's mistaken belief as to the expiration date of its policy, Baker enjoys the benefit of being permitted to keep workers' compensation benefits paid by Seaboard for which it may not have been liable had it not made the mistake it did. Nothing appears in the record to show some *special particular* respect in which, by justifiably relying on Seaboard's conduct, Baker acted to change his position to his detriment.[2]

---

**2.** It is evident, too, that the Commission itself was not misled by Seaboard's conduct indicat-

ing that its bond was still in full force and effect. The evidence shows that the Commis-

### 3.

A third possible interpretation of the Commission's finding of a "waiver" is that the Commissioner was purporting to bar Seaboard's assertion of its defense on the ground of issue preclusion by virtue of a prior adjudication.

Several circumstances shown here suggest such an approach. When the Commission decided Baker's 1976 Petition for an Award of Compensation regarding his February, 1976, injury, the adjudication was that Baker was entitled to an award of compensation because this injury was work-related and was independent of the prior injury he sustained in 1975. In that adjudication the Commission found Seaboard liable, as Associated's "guarantor", to pay workers' compensation benefits to Baker and ordered that Seaboard pay such benefits to Baker as had then arisen as a result of his February 1976 injury. Seaboard took no appeal from that adjudication, and it made the payments to Baker ordered by the Commission.

The hearings in connection with that adjudication were held on October 20 and December 15, 1976 and the Commission's decision and order were not issued until February 24, 1977. Yet, long before the hearings were held and the Commission issued its decision on May 17, 1976 the Commission itself had notified Seaboard that its records revealed that Seaboard's last bond to secure Associated had expired on August 5, 1975. This notice to Seaboard was given in response to Seaboard's having written to the Commission to indicate a purported cancellation of that bond, to be effective May 28, 1976. The Commission told Seaboard that the effectiveness of the bond had already terminated August 5, 1975, and therefore such a cancellation could not be in order. The Commission further advised Seaboard that the Commission was "experiencing problems because of the lack of coverage for this employer since the expiration date of the bond."

Seaboard had thus been given opportunity to ascertain the actual facts regarding the expiration date of the bond in sufficient time to raise the defense of the bond's expiration while Baker's Petition for Award of Compensation regarding his February 5, 1976 injury was awaiting hearing and decision. Yet, Seaboard took no such action. In such circumstances it would be arguable that Seaboard should be precluded from now relitigating the already adjudicated issue of Seaboard's foundational liability to pay workers' compensation benefits to Baker attributable to his February 5, 1976 injury. Cf. *Hossler v. Barry*, Me., 403 A.2d 762, 767 (1979); Restatement (Second) of Judgments (Tent. Draft No. 4, 1977) § 68(a), (b), (c) and (d).

In the present situation, however, we discern various subsidiary problems, both factual and legal, arising in connection with a purported application of principles of issue preclusion that we cannot adequately address on appeal until they have been developed by counsel and considered by the Commission. Yet, as we have indicated, it is not unreasonable to believe that by using the ambiguous concept of "waiver", the Commissioner may well have intended to invoke issue preclusion to bar Seaboard's assertion of the defense that its bond had expired prior to Baker's February, 1976 injury. In these circumstances we believe that in fairness to all concerned the case should be remanded to the Commission for further development by counsel, and consideration by the Commission, of the matter of issue preclusion. In these further proceedings the parties shall be allowed opportunity to enlarge the record by presenting such additional evidence, as they may choose, relevant to issue preclusion as discussed in this opinion.

More particularly, we perceive among the questions to be addressed the following.

In connection with a worker's petition for an award of compensation, what is the jur-

---

sion knew in May of 1976 that Seaboard's bond to secure Associated as a self-insurer had expired on August 5, 1975, and the Commission acknowledged in correspondence that it was

"experiencing problems because of the lack of coverage of this employer since the expiration date of the bond."

isdiction of the Commission over a bonding company which has executed a bond to provide the security statutorily required to allow an employer to qualify as an individual self-insurer? Section 23 of the Act indicates that such security may be treated differently from the policy of insurance which an employer who is not a self-insurer must have. Other provisions of the Act further highlight this distinction. For example, under Section 23(1) an insurance company may not cancel a workers' compensation insurance policy issued by it prior to that policy's expiration date "until at least 30 days after mailing to the commission and to the employer a notice of the cancellation of such insurance." Under Section 23(2), however, no such notice appears to be required for a surety company which has given a bond as security for a self-insuring employer. Moreover, under the Act's definition of "employer" in Section 2(1), (6) the insurance company which has "insured" an employer is identified with the "employer." Accordingly, when a worker brings a petition for an award of compensation against an employer, the insurance carrier may be deemed automatically involved as a party to the proceeding. In addition, all workers' compensation insurance policies and rates are strictly regulated by the Superintendent of Insurance (Section 22), whereas a self-insuring employer merely furnishes proof of his ability to pay compensation and benefits. If a bond is provided (instead of the securities or cash authorized as alternatives) to be the security for an individual self-insurer, the statute specifies that it shall be payable to the Treasurer of State. Also, the Act indicates no procedure by which the liability of

the bonding company on a bond issued payable to the Treasurer of State is to be enforced, thus raising the question whether enforcement is to be in a proceeding before the Commission or in a plenary civil action brought in a court to recover on the bond.

Other problems are suggested by significant differences in the statutory approach to individual, as distinguished from group, self-insurers. Section 23(2) dealing with individual self-insurers, such as Associated, makes no reference to the possibility of insolvency or bankruptcy;[3] by contrast, if the employer is a participant in a plan of group self-insurance pursuant to Section 23(4), the statute states plainly:

"The insolvency or bankruptcy of a participating employer shall not relieve the group self-insurer from the payment of compensation for injuries or death sustained by an employee during the time the employer was a participant in such group self-insurance." § 23(4)(C)

Might this suggest that a worker employed by an individual self-insurer is given less statutory protection than a worker employed either by an employer who is included within a group self-insurer or an employer insured by a worker's compensation insurance policy?

Such problems as the foregoing arising from the statutory scheme as to self-insurers must be addressed by the Commission, and ruled upon by it, before principles of issue preclusion by virtue of prior adjudication could be applied to bar Seaboard from raising the defense it has sought to raise as to its liability to pay the workers' compensation benefits Baker sought in the petitions he filed in May and October, 1977.[4]

3. Moreover, it would appear that an employer who is an individual "self-insurer" under the Workers' Compensation Act is not an "insurer" within the definition of 24–A M.R.S.A. § 4 to bring into play the protections afforded by the Maine Insurance Guaranty Association Act (24–A M.R.S.A. §§ 4431–4450, incl.) in the event of the insolvency of an "insurer."

4. The record suggests another issue to be explored on remand as to Seaboard's liability under its bond: whether the bond contained an appropriate condition regarding such liability,

as required by the Act. Section 23(2) mandates that the security bond provided to allow an employer to qualify as a self-insurer is "to be conditioned upon the faithful performance of this Act relating to the payment of compensation and benefits to any injured employee." Seaboard's bond, as it is before us in this record, appears to have no such condition. It says only:

"[I]f the said license of the Principal [to be a self-insurer from August 5, 1974 to August 5, 1975] shall be revoked or if the Commission shall refuse to renew the license or if the

The entry is:

Appeal sustained.

The pro forma judgment of the Superior Court is vacated.

Case remanded to the Workers' Compensation Commission for further proceedings in accordance with the opinion herein.

It is ordered that Seaboard Surety Company pay to the employee an allowance of $550.00 for his counsel fees plus his reasonable out-of-pocket expenses incurred in this appeal.

POMEROY, ARCHIBALD and GLASSMAN, JJ., did not sit.

principal shall cease to transact business in the State or if the Principal shall insure with an insurer, if the principal shall upon demand deposit with the State Treasurer an amount of securities equal to the penal sum of this bond or a single premium non-cancellable policy issued by some insurance company authorized to transact the business of workmen's compensation insurance in this state, insuring him against any liability that may

have arisen under said Chapter 31, or a bond executed as Surety by some company authorized to transact the business aforesaid in this state, in an amount and form approved by the Commission, guaranteeing payment of any liability on his part that may have arisen under the aforesaid Chapter 31, then this obligation shall be void; otherwise to remain in full force and effect."