**Philip F. POSTLEWAITE, John S. Pennell, Plaintiffs–Appellants,**

**v.**

**MCGRAW–HILL, INC., Defendant– Appellee.**

**Docket No. 01–7570.**

United States Court of Appeals, Second Circuit.

Argued: Feb. 19, 2003.

Decided: June 10, 2003.

---

Philip F. Postlewaite pro se, Chicago, Illinois (John S. Pennell pro se, Evanston, Illinois, McDermott, Will & Emery, Chicago, Illinois, on the brief), for Plaintiffs–Appellants.

Richard Dannay, New York, New York (Cowan, Liebowitz & Latman, New York, New York, on the brief), for Defendant–Appellee.

Before: OAKES, KEARSE, and B.D. PARKER, Jr., Circuit Judges.

KEARSE, Circuit Judge.

Plaintiffs *pro se* Philip F. Postlewaite and John S. Pennell ("plaintiffs" or the "Authors") appeal from a judgment of the United States District Court for the Southern District of New York, Jed S. Rakoff, *Judge,* dismissing their complaint against defendant McGraw–Hill, Inc. ("McGraw–Hill"), for alleged breach of contract by reason of McGraw–Hill's nonpayment of royalties in connection with its assignment to Thomson Legal Publishing Inc. ("Thomson") of an agreement between McGraw–Hill and Augusta Software Design, Inc. ("ASD"), for ASD's production and delivery of a CD–ROM version of a treatise authored by plaintiffs (the "Software Agreement"). The district court granted McGraw–Hill's motion for summary judgment on the ground of collateral estoppel, ruling that a prior judgment confirming an arbitration award in favor of McGraw–Hill against plaintiffs, *see Postlewaite v. McGraw–Hill, Inc.,* No. 98 Civ. 0611, 1998 WL 751687 (S.D.N.Y. Oct. 28, 1998) (Stanton, *J.*) (*"Postlewaite I "*), *aff'd mem.,* 2001 WL 505972 (2d Cir. May 11, 2001), established that McGraw–Hill's assignment of assets to Thomson did not impose any royalty obligation on McGraw–Hill. On appeal, plaintiffs contend that the district court's collateral estoppel ruling is erroneous because the arbitrators did not necessarily make the ruling imputed to them by the district court. For the reasons that follow, we agree, and we vacate the judgment and remand for further proceedings.

## I. BACKGROUND

The terms of the various agreements and the acts of the respective parties are not in dispute. Plaintiffs are the authors of *Partnership Taxation, Fifth Edition* (the "Work"). In 1993, they entered into an agreement with McGraw–Hill for publication of the Work (the "Publishing Agree-

ment" or "Agreement") through a McGraw–Hill division, Shepard's Topical Publishing Division ("Shepard's"). As to royalties, the Agreement provided, *inter alia,* that for at least a five-year period, McGraw–Hill was to pay the Authors 20% of the full, undiscounted list price of each copy of the Work sold (Publishing Agreement § 7(a)(1)), as well as

> *20 percent of the Publisher's gross receipts from the sale, assignment, or licensing to others by the Publisher of any rights to the Work or any part of the Work or upkeep service prepared by the Authors shall be paid to the Authors*

(*id.* § 7(a)(3) (emphasis added)). The Agreement also provided that

> [t]his Agreement may not be assigned by either the Authors or the Publisher without the prior written consent of the other party or parties, which shall not be unreasonably withheld. This Agreement shall be binding on the parties signing it and on all their heirs, legal representatives, successors, and permitted assignees.

(*Id.* § 13.)

In 1995, McGraw–Hill sold the Shepard's assets, which included some 280 publishing agreements, to Thomson for approximately $35,000,000. In anticipation of the sale, McGraw–Hill sent letters dated November 17, 1995, and December 18, 1995, to Pennell and Postlewaite, respectively (the "McGraw–Hill Letters"), seeking plaintiffs' consent to the assignment of their Publishing Agreement:

> We request your consent to assign your publishing agreement to Thomson as part of Thomson's acquisition of Shepard's Topical Publishing Business. Shepard's will continue to pay you all your royalties under your publishing agreement until the closing of this transaction. *Thomson will assume all of Shepard's obligations under your pub-*

> *lishing agreement after the closing, including, of course, the obligation to pay your royalties . . . .*

(McGraw–Hill Letters at 1 (emphasis added).) Each such letter included a "CONSENT TO ASSIGNMENT" to be executed by the Authors. Each plaintiff signed that portion of the letter, dating his consent December 20, 1995 (the "Authors' Consents"), and returned the letters to McGraw–Hill. The "CONSENT TO ASSIGNMENT" stated as follows:

> I hereby consent to the assignment of the Publishing Agreement pertaining to a work entitled *Partnership Taxation, 5/e* to Thomson Legal Publishing Inc., effective as of the date when Thomson Legal Publishing, Inc. acquires the Topical Publishing Business of Shepard's/McGraw–Hill, Inc.

(Authors' Consents.)

A. *The Arbitration Award and* Postlewaite I

In 1997, the Authors commenced an arbitration proceeding against McGraw–Hill ("1997 Arbitration") claiming that, under the royalty provisions of § 7(a)(3) of the Publishing Agreement, the transfer of that Agreement to Thomson entitled them to 20% of that part of the gross receipts of the sale that was attributable to the sale or assignment of rights to the Work. In its answer to the arbitration complaint ("Arbitration Answer"), McGraw–Hill asserted, *inter alia,* that the Authors, "having consented to the assignment of the Publishing Agreement to another publisher, have waived any claim for royalties or other payment." (McGraw–Hill Arbitration Answer ¶ 4.) In its brief on the merits, submitted following limited discovery, McGraw–Hill argued primarily that

> [t]he heart or essence of the McGraw–Hill/Thomson transaction was not a sale or assignment of rights in the works

under ¶ 7a(3), but rather a sale or assignment of the *agreements* for those works under ¶ 13—in which Thomson was substituted for McGraw–Hill and took McGraw–Hill's place under the agreements.

(McGraw–Hill's Hearing Brief, dated September 29, 1997, at 7 (emphasis in original).) McGraw–Hill contended that

> [t]he December 1995 correspondence between Claimants and McGraw–Hill reflects this crucial distinction between assignment of the publishing agreement as part of the sale of a business and the licensing or assignment of rights in a work covered by that agreement. . . .
>
> Thus, McGraw–Hill's letters (written well *before* Claimants asserted their claim) made it clear that its share as publisher . . . was being sold, and that as part of the sale the "publishing agreement" was being assigned, not rights to Claimants' work. . . . Claimants signed the "Consent to Assignment" clause at the foot of each letter, in which they gave their "consent to the assignment of the Publishing Agreement [for the Work] to Thomson," effective as of the date of Thomson's acquisition of the business. McGraw–Hill's sale of the business to Thomson, and Claimants' consent to the assignment of their Publishing Agreement as part of the sale, fall squarely within ¶ 13 of the agreement.

(*Id.* at 9–10 (emphasis in original).) McGraw–Hill argued that "[n]o royalty or other payment obligation applies to [¶ 13]. Moreover, [the Authors] overlook their own written consent pursuant to the assignment clause." (*Id.* at 6.)

McGraw–Hill also argued that the granting of plaintiffs' claim would result in their unjust enrichment:

> [c]laimants' interpretation would also lead to absurd and unintended conse-

quences. For example, part of the sale of the business included copies of Claimants' books held in inventory. To pay them a royalty on those books when the business is sold and then to pay them again when the .new publisher sells the same books (¶ 7a(1)), would be to give them two payments for the single sale of each book.

(*Id.* at 11; *see also id.* at 13 ("Payment to Claimants for McGraw–Hill's assignment of the Publishing Agreement to Thomson would amount to giving Claimants a windfall.").)

The arbitrators unanimously denied the Authors' claims. The award read, in pertinent part, as follows:

> WE, THE UNDERSIGNED ARBITRATORS, . . . do hereby, FIND and AWARD, as follows:
>
> A. The arbitrators' [*sic* ] hereby determine that there are no royalties due, with respect to the sale of the Topical Publishing. unit of SHEPARD'S/MCGRAW–HILL, INC. to Thomson Legal Publishing Inc., to PHILIP F. POSTLEWAITE AND JOHN S. PENNELL, hereinafter referred to jointly and severally as CLAIMANTS, from SHEPARD'S/MCGRAW–HILL, INC., hereinafter referred to as RESPONDENT.
>
> WE, THEREFORE, AWARD, AS FOLLOWS:
>
> 1. With respect to the claims of CLAIMANTS against RESPONDENT, same is hereby denied in its entirety.
>
> . . . .
>
> 4. This Award is in full settlement of all claims submitted to this Arbitration.

(Arbitration. Award, dated October 29, 1997, at 1–2.) The arbitrators gave no explanation for their decision. Paragraphs 2 and 3 of the award dealt only with the fees to be paid to the arbitrators and the arbitration association.

In *Postlewaite I,* the district court, Stanton, *J.,* confirmed the arbitration award, noting that it

> "must confirm the arbitrators' decision if a ground for the arbitrators' decision can be inferred from the facts of the case. This is so even if the ground for their decision is based on an error of fact or an error of law." ... The justification need only be "barely colorable."

1998 WL 751687, at *3 (quoting *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.,* 103 F.3d 9, 13 (2d Cir.1997)). Applying this standard, the court concluded, *inter alia,* that "there is more than a 'colorable' reason for the arbitrators' decision. They could have found that the assignment of the entire Agreement to Thomson merely replaced McGraw–Hill with Thomson." *Postlewaite I,* 1998 WL 751687, at *3.

## B. *The Present Action*

The Shepard's assets sold to Thomson also included McGraw–Hill's Software Agreement with ASD for production of a computerized version of the Authors' Work. In 2000, plaintiffs commenced the present action, alleging that McGraw–Hill had breached the Publishing Agreement by failing to pay them royalties based on its sale of the Software Agreement. In arguing this claim, plaintiffs asserted that they had not learned of the Software Agreement's sale, or even of its existence, until three months after the arbitrators rendered their award. After learning of the Software Agreement, plaintiffs unsuccessfully demanded a royalty payment from McGraw–Hill based on the value of the Software Agreement sold to Thomson. As to that contract's value, plaintiffs pointed to statements in a McGraw–Hill internal document that the ASD program "could lead to Shepard's realization of significant sums on the sale of the asset as part of the topical line"; and they pointed

out that, indeed, a jury, in a Colorado state-court action brought by ASD against McGraw–Hill for, *inter alia,* failure to pay a royalty to ASD upon the sale of the Software Agreement to Thomson, had found that the value of the Software Agreement was $7,130,000. The complaint asserted that under § 7(a)(3) of the Publishing Agreement, the Authors were thus entitled to 20% of $7,130,000, or $1,426,000.

In opposition to the present complaint, McGraw–Hill asserted, *inter alia,* a defense of collateral estoppel, arguing that plaintiffs' claim that § 7(a)(3) of the Publishing Agreement entitled them to a royalty for the inclusion of the Software Agreement in the sale of the Shepard's assets to Thomson presented the same issue that had been decided in McGraw–Hill's favor in the 1997 Arbitration. Plaintiffs argued that collateral estoppel did not apply because the arbitrators had not stated the basis for their decision, and thus the 1997 award could have been based on grounds that would not be applicable to their present claim, including either waiver resulting from the Authors' Consents or unjust enrichment.

McGraw–Hill urged the district court to reject the contention that the award could have been based on a finding of waiver, stating that

> it is true McGraw Hill, in its answer in the arbitration, at the very outset of the arbitrate [*sic*] ... put in a defense that the plaintiffs had waived their rights to royalties, but we didn't believe that was so, and we, in effect, never argued that. That was never—that argument was never presented to the arbitrators. If you look at our brief, we didn't argue it at all.

(Transcript of Argument dated September 11, 2000 ("Tr."), at 19.) And although McGraw–Hill conceded that it had argued

unjust enrichment in its brief to the arbitrators, it stated to the district court that unjust enrichment was not presented as a separate defense but was merely hypothesized in support of its position as to the proper interpretation of the Publishing Agreement. (*See* Tr. 21–22.)

Plaintiffs disputed, *inter alia*, McGraw-Hill's representation that the waiver defense asserted in its answer in the arbitration proceeding had not been pursued in McGraw–Hill's brief to the arbitrators. They pointed out that, in that brief, McGraw–Hill had in fact discussed the waiver issue and had mentioned the Authors' Consents seven times. (*See* Tr. 25.)

In an opinion published at 134 F.Supp.2d 588 (S.D.N.Y.2001) ("*Postlewaite II*"), the district court ruled that plaintiffs' present claims are barred by collateral estoppel because the 1997 Arbitration decided that the assignment of assets to Thomson imposed no royalty obligation on McGraw–Hill. The court stated that

> while the arbitrators in the prior litigation did not provide a rationale for their holding, this Court, in confirming the arbitration award, found only one "colorable" reason for it: "the assignment of the entire [Publishing] Agreement to Thomson merely replaced McGraw–Hill with Thomson." [*Postlewaite I*], 1998 WL 751687, at *3 (relying on the subsequent history of the relationship between the parties, the contractual language, and industry practice to support its conclusion that Thomson substituted for McGraw–Hill). On this rationale, McGraw–Hill would not be liable for any royalty resulting from any assignment, including the assignment of the Software Agreement.

*Postlewaite II*, 134 F.Supp.2d at 590.

The district court rejected plaintiffs' contentions that the arbitrators' award could have been based on other grounds. As to the contention that the award could have been based on waiver, the court stated that

> plaintiffs offer no support for this hypothesis: nothing in plaintiffs' letter consenting to assignment of the Publishing Agreement makes any mention of royalties, much less waiver, ... nor did the defendant raise this argument in its brief to the arbitrators .... It is simply not plausible that the arbitrators independently conceived, much less relied on, this exceedingly tenuous theory to support their judgment.

*Id.* As to plaintiffs' contention that the award could have been based on a theory of unjust enrichment, the court found that possibility irrelevant, as that theory would not have been inconsistent with a finding that the Authors were not entitled to royalties, upon the assignment of assets to Thomson, as a matter of contract interpretation:

> [A]part from the fact it appears unlikely that the arbitrators in fact relied on this [unjust enrichment] rationale, even if one were to assume, *arguendo,* that they did, such is hardly mutually exclusive of their conclusion, separately inferred, that Thomson stood in the shoes of McGraw–Hill. Even more importantly, the rationale, if it had been adopted by the arbitrators, would, contrary to plaintiffs' argument, collaterally bar recovery in this case, for its force lies not in the fact that plaintiffs *did* double-dip on royalties, but that they *could* have done so; thus, the arbitrators' hypothesized rejection of plaintiffs' asserted entitlement to doubled royalties establishes the unreasonableness of plaintiffs' interpretation of the Publishing Agreement's royalty clause and hence bars recovery here as well.

*Id.* at 590–91 (emphases in original). The district court concluded that plaintiffs are collaterally estopped from pursuing their present claim, and it granted McGraw-Hill's motion for summary judgment dismissing the complaint. Judgment was entered accordingly, and this appeal followed.

## II. DISCUSSION

On appeal, plaintiffs contend that the district court erred in applying principles of collateral estoppel because the arbitrators did not necessarily decide that the sale of the Shepard's assets to Thomson merely replaced McGraw-Hill with Thomson and, under the terms of the Publishing Agreement, triggered no royalty obligations on the part of McGraw-Hill. Plaintiffs argue that the court should instead have granted summary judgment in their favor. For the reasons that follow, we agree that collateral estoppel was not applicable, and we vacate the judgment and remand to the district court for further proceedings.

█ Under either federal law or New York State law, collateral estoppel, or issue preclusion, bars the relitigation of an issue that was raised, litigated, and actually decided by a judgment in a prior proceeding, regardless of whether the two suits are based on the same cause of action. *See, e.g., Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); *Capital Telephone Co. v. Pattersonville Telephone Co.,* 56 N.Y.2d 11, 17, 451 N.Y.S.2d 11, 13, 436 N.E.2d 461 (1982); 18 Moore's Federal Practice § 132.01[2] (3d ed. 2003) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination—even if erroneous—is conclusive in a subsequent

action between the parties, whether on the same or a different claim.").

█ As indicated, in order for a judgment to be preclusive, the issue in question must have been actually decided, and its determination must have been essential to the judgment. *See, e.g., Tucker v. Arthur Andersen & Co.,* 646 F.2d 721, 728 (2d Cir.1981). If an issue was not actually decided in the prior proceeding, or if its resolution was not necessary to the judgment, its litigation in a subsequent proceeding is not barred by collateral estoppel. *See, e.g., Brown v. Felsen,* 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *Jim Beam Brands Co. v. Beamish & Crawford Ltd.,* 937 F.2d 729, 734 (2d Cir.1991), *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1169, 117 L.Ed.2d 415 (1992); *Balderman v. United States Veterans Administration,* 870 F.2d 57, 62 (2d Cir.1989). The prior decision of the issue need not have been explicit, however, "[i]f by necessary implication it is contained in that which has been explicitly decided." *Norris v. Grosvenor Marketing Ltd.,* 803 F.2d 1281, 1285 (2d Cir.1986) (internal quotation marks omitted). If the decision was implicitly necessary, "it will be the basis for collateral estoppel." *Id.* (internal quotation marks omitted).

█ Under New York law as it has evolved, collateral estoppel may also be applied, assuming there has been a final determination on the merits, to an issue resolved in arbitration. *See Jacobson v. Fireman's Fund Insurance Co.,* 111 F.3d 261, 267–68 (2d Cir.1997). Application of the estoppel following arbitration, however, may be problematic because arbitrators are not required to provide an explanation for their decision, *see, e.g., Bernhardt v. Polygraphic Co. of America,* 350 U.S. 198, 203, 76 S.Ct. 273, 100 L.Ed. 199 (1956) ("Arbitrators ... need not give their reasons for their results."); *Sobel v. Hertz,*

*Warner & Co.,* 469 F.2d 1211, 1214 (2d Cir.1972) ("[T]he Supreme Court has made it clear that there is no general requirement that arbitrators explain the reasons for their award."); *Bay Ridge Medical Group v. Health Insurance Plan of Greater New York,* 22 A.D.2d 807, 807, 254 N.Y.S.2d 616, 618 (2d Dep't 1964) ("The validity of an [arbitrator's] award is unaffected by the absence of a recital of the reasons for the award.").

■ Further, given "the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation," judicial review of arbitration is very limited. *Folkways Music Publishers, Inc. v. Weiss,* 989 F.2d 108, 111 (2d Cir. 1993). Such an award may be vacated on the ground, for example, that it was fraudulently procured, or that the arbitrators were guilty of misconduct, *see, e.g.,* 9 U.S.C. § 10 (2000), or that it was beyond the arbitrators' jurisdiction, *see, e.g., New York Bus Tours, Inc. v. Kheel,* 864 F.2d 9, 12–13 (2d Cir.1988), or that it was issued in "manifest disregard" of the law, *see Wilko v. Swan,* 346 U.S. 427, 436–37, 74 S.Ct. 182, 98 L.Ed. 168 (1953), *overruled on other grounds, Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989); *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 942, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *see, e.g., DiRussa v. Dean Witter Reynolds Inc.,* 121 F.3d 818, 821 (2d Cir.1997) (manifest disregard of the law consists of the arbitrators' disregard of "well defined, explicit" legal principles known to them, which were "clearly applicable to the case" (internal quotation marks omitted)). But absent such grounds, an application to confirm the award must be granted, as the district court in *Postlewaite I* observed, "[i]f there is 'even a barely colorable justification for the outcome reached,'" *Willemijn Houdst-*

*ermaatschappij, BV v. Standard Microsystems Corp.,* 103 F.3d at 13 (quoting *Matter of Andros Compania Maritima, S.A.,* 579 F.2d 691, 704 (2d Cir.1978)).

■ "[T]he party asserting preclusion bears the burden of showing *with clarity and certainty* what was determined by the prior judgment," and "[i]ssue preclusion will apply only if it is *quite clear* that this requirement has been met." *BBS Norwalk One, Inc. v. Raccolta, Inc.,* 117 F.3d 674, 677 (2d Cir.1997) (internal quotation marks omitted) (emphases added); *see, e.g., Kulak v. City of New York,* 88 F.3d 63, 72 (2d Cir.1996). In order "[t]o obtain summary judgment on collateral estoppel grounds" based on an arbitration award, "the defendants must make a showing so strong that no fair-minded jury could fail to find that the arbitrator necessarily denied the claim for the reason they assert." *BBS Norwalk One, Inc. v. Raccolta, Inc.,* 117 F.3d at 677. This is a heavy burden that cannot be met with evidence that is "equivocal." *Id.*

■ Given these principles and the fact that the award in the 1997 Arbitration did not state the ground of the arbitrators' decision, we cannot conclude that the application of collateral estoppel in the present case was correct. The district court in *Postlewaite II* stated that the decision in *Postlewaite I* confirming the award had "*found only one* 'colorable' reason" for the award, that is, that " 'the assignment of the entire [Publishing] Agreement to Thomson merely replaced McGraw–Hill with Thomson.'" *Postlewaite II,* 134 F.Supp.2d at 590 (emphasis added) (quoting *Postlewaite I,* 1998 WL 751687, at *3). We have two difficulties with this rationale. First, the *Postlewaite I* court, although only mentioning one "colorable" ground, did not state that only one such ground existed. Indeed, that court stated that the arbitrators "*could have* found that

the assignment of the entire Agreement to Thomson merely replaced McGraw–Hill with Thomson," *Postlewaite I*, 1998 WL 751687, at *3 (emphasis added), plainly leaving room for the possibility that the arbitrators could have based their award on some other finding. Second, even if the *Postlewaite I* court had stated that there was only one particular ground that was colorable, that would not necessarily mean that that was the ground actually relied on by the arbitrators. Nor would the court's statement constitute a ruling that that "colorable" ground was in fact meritorious.

Further, we regard the record in the arbitration proceeding as easily allowing for the possibility that the arbitrators based their award on a finding of waiver, rather than on an interpretation of the Publishing Agreement itself as simply imposing no obligation on McGraw–Hill to pay plaintiffs royalties with respect to its sale of the Shepard's assets to Thomson. The *Postlewaite II* court rejected this possibility because it viewed the waiver defense as not argued in McGraw–Hill's brief to the arbitrators, stating that a waiver finding would have amounted to an "independent[ ] conce[ption]" of the arbitrators, *Postlewaite II*, 134 F.Supp.2d at 590; and it found the waiver theory "exceedingly tenuous," seeing nothing in the Authors' Consents that "ma[de] any mention of royalties, much less waiver," *id.* We disagree with both views. First, the waiver theory would hardly have been an invention of the arbitrators, given that, as discussed in Part I.A. above, McGraw–Hill had explicitly pleaded that plaintiffs, by signing and delivering the Authors' Consents, "waived any claim for royalties or other payment." (McGraw–Hill Arbitration Answer ¶ 4.) We see no indication that that defense was ever withdrawn; and McGraw–Hill's repeated references to the Authors' Consents in its brief to the arbitrators could

fairly have been read as pursuit of the defense of waiver.

Second, the Authors' Consents, although not themselves explicitly referring to royalties, must be read in conjunction with the McGraw–Hill Letters which solicited consent and which indeed set out the requested consent terms—that were eventually signed by the Authors—on the second page of the McGraw–Hill Letters. The McGraw–Hill Letters, quoted in Part I.A. above, expressly stated that Shepard's would pay the Authors royalties until the time of the sale and that payment of royalties would be made by Thomson thereafter. We think it entirely possible that the arbitrators decided in favor of McGraw–Hill on the basis that the Authors' Consents to that specified division of royalty responsibility constituted waiver of any claim against McGraw–Hill for royalties on the basis of the assignment. The waiver theory was neither tenuous nor unargued by McGraw–Hill. It does not appear, however, that such a waiver would have extended to the Authors' present claim for royalties relating to McGraw–Hill's sale of the Software Agreement, accepting plaintiffs' assertion that when they gave their consents they had no knowledge of the existence of the Software Agreement.

It is also possible that the arbitrators ruled in favor of McGraw–Hill on the ground that upholding the Authors' claim could result in unjust enrichment, as McGraw–Hill argued in its brief to the arbitrators. The *Postlewaite II* court stated that such a finding did not mean that the arbitrators did not also interpret the Publishing Agreement as simply giving the Authors no entitlement to a royalty upon the assignment of the Shepard's assets. *See* 134 F.Supp.2d at 590 (stating that these two findings would not have been "mutually exclusive"). While not disagreeing with the court's view that two such

findings could coexist, we reject the district court's conclusion that the contract interpretation finding would constitute collateral estoppel: if the arbitrators made both findings, either of which would have been a colorable basis for the award, neither finding may properly be said to have been essential to the award, *see Restatement (Second) of Judgments* § 27 comment *i* (1982) ("If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone.").

We conclude that on this record, McGraw–Hill has failed to carry its burden of making any showing—much less a clear showing—that the arbitrators (a) necessarily found that the Publishing Agreement did not give the Authors any entitlement to royalties with respect to an assignment of assets, or (b) if they made that finding, that that finding was essential to their award. Accordingly, we conclude that plaintiffs' present claim is not barred by collateral estoppel. We express no view of the merits.

## CONCLUSION

We have considered all of McGraw–Hill's arguments on this appeal and have found them to be without merit. The judgment dismissing the complaint on the ground of collateral estoppel is vacated, and the matter is remanded for further proceedings not inconsistent with this opinion.

We are constrained to note, however, that although the complaint in the present case premised federal jurisdiction on diversity of citizenship, the allegations of the complaint did not reveal McGraw–Hill's principal place of business and hence are insufficient to show McGraw–Hill's citizenship within the meaning of 28 U.S.C. § 1332(c)(1). The jurisdictional question, if not previously resolved, should be addressed by the district court at the outset.

No costs.