STATE OF MAINE                          SUPERIOR COURT
WASHINGTON, ss                          Civil Action
                                        Docket No. CV-03-26


PATRICIA RUTH BEAL
        Plaintiff

        v.

ALLSTATE INSURANCE CO.,
        Defendant


                          FINAL ORDER


        The Law Court following its decision in this matter on
March 11, 2001 issued a mandate[1], remanding this matter to
the Superior Court for resolution consistent with their
Order.  Subsequently, several phone conferences were held
with counsel, with the most recent being November 19, 2010,
concerning their positions on the outstanding issues.  This
included the submission of proposed judgments and argument.
Final fact fact stipulations and proposed judgments were
filed with the Court by November 29, 2010.

        In addition, at supplemental oral argument, the
parties have agreed that Allstate had consented to
Plaintiff's settlement with the tortfeasor and therefore
was not prejudiced by the settlement of the underlying
claim against Prosky.

        The issues left to be decided are Plaintiff's
entitlement to prejudgment interest and her claim that she
is owed $5,000 under the medical payments provisions of her
Allstate policy.


                      FINAL DECISION
                MOTION FOR SUMMARY JUDGMENT


_____
[1]   2010 ME 20 989 A.2d 733


                             1           RECEIVED DEC 2 2 2010

## Prejudgment interest

Does the prejudgment interest apply from the date the initial claim was filed against Mr. Prosky (July 20, 2000) or the date the underinsured claim was filed against Allstate (July 24, 2003)?

Prejudgment interest has been identified as an element of compensatory damages. *Trask v Automobile Ins. Co.*, 1999 ME 94, ¶6 736 A.2d 237, 238. It follows that an amount tendered to satisfy a judgment must be first applied to interest and the remainder to the judgment. *Carter v. Williams*, 2002 ME 50, 792 A.2d 193.

The Law Court has again confirmed that the 'goal of the uninsured/underinsured motorist statute (UM statute) was to provide an injured insured the same recovery which would have been available had the tortfeasor been insured to the same extent as the injured party. *Farthing v. Allstate*, 2010 ME 131 (decided 12/9/10)

Accepting that prejudgment interest is compensatory and that that goal of the UM coverage is to provide to the victim the same recovery as if the tortfeasor had been insured up to the UM limits (here $150,000), summary judgment must be granted in favor of Plaintiff Beal on the prejudgment interest question. By its policy, Allstate has agreed to provide its insured with a recovery in an "amount she would have received had the tortfeasor been insured to the same extent as the injured party. The Court finds and concludes that such a recovery includes payment of prejudgment interest back to the date the litigation commenced against the tortfeasor. The prejudgment interest is calculated from July 20, 2000 on a judgment of $135,000, which was the amount of the arbitration award. Allstate is to be given credit for the incremental payments made on behalf of tortfeasor Prosky and subsequently Ms. Beal's UM coverage, while applying those payments to the interest due and then the balance reflecting the principal owed. Had Mr. Prosky been insured in the same amount as the victim, prejudgment interest would have accrued as of the date of the initial complaint, not the complaint against Allstate, which only served to confirm the 'amount' of the UIM coverage not its existence.

The Court declines Allstate's invitation to order any partial waiver of interest due to Plaintiff's delays in

2

prosecuting this claim in light of the applicable law both relied on and resulting from this case.

## $5,000 Medical Payments

It is not disputed that the arbitration award in favor of Beal included sums for medical expenses paid and that the Allstate policy included, in addition to the bodily injury UM coverage, a $5,000 automobile medical payment benefit. Allstate's UIM obligation to its insured ends with the total payment of $150,000. *Beal v. Allstate*, 2010 ME 20 at ¶3. The Allstate policy provides several different types of coverage. There is separate coverage for bodily injury liability, property damaged liability, uninsured motorists and automobile medical payments, among others. [See attachments to attorney Greif's affidavit.] Counsel have not directed the Court to any exemptions or limitations that apply to these facts with regard to the medical payment coverage. See *Tibbetts v. Dairyland*, 210 ME 61, ¶ 23, 999 A.2d 930. Accordingly, the Court interprets this Allstate policy as providing a $5,000 medical payment coverage in addition to the UM limits of the policy which are $150,000. The Court grants Plaintiff's Motion for Summary Judgment with regard to medical payments and awards Plaintiff $5,000 medical payment coverage in addition to the arbitration award of $135,000 and payments of prejudgment interest. The total of the latter two payments may not exceed $150,000. The $5,000 medical payments coverage would be in addition to that number and would reflect this Court's application of the principles that the victim should neither receive double payment nor An amount in excess of what the victim would receive if the tortfeasor was insured to the same extent as the injured party. *Tibbetts v Dairyland*, surpa at ¶ 6,7, at 934.

The Court rules that on the stipulated facts as supplemented, the medical payment coverage is separate contractual coverage to which Plaintiff Beal is entitled. It is a separate benefit under the policy and does not constitute double payment, which would be inconsistent with the UIM policy and case law. The Court rules in favor of Plaintiff Beal on the pending Summary Judgment Motion on this issue.

## Additional Issues

3

Counsel have asked the Court to rule with respect to the claims of costs associated with this litigation. The matter of the award of costs when this matter was before the Law Court is a matter within the jurisdiction of the Law Court. In this action the Court awards costs to the Plaintiff in the amount of $100.

The entry is that on the remaining issues before the Court on Summary Judgment:

1. The Plaintiff is awarded summary judgment against Allstate Insurance Company in the form of prejudgment interest on the full amount of the arbitration award ($35,000) from the date of the ~~$135,00~~ initial complaint of July 20, 2000, to March 10, 1010, with credit for interim payments as made.
2. The Plaintiff is awarded summary judgment against Allstate Insurance Company and Allstate Insurance Company is ordered to pay Plaintiff $5,000 as a separate benefit under automobile medical payments coverage with interest from July 20, 2000.

3. Plaintiff is awarded litigation costs in the amount of $100 as against Allstate Insurance Company.

December 16, 2010

Kevin M. Cuddy
Justice, Superior Court

FILED

DEC 1 7 2010

MARILYN E. BRALEY Clerk

4

STATE OF MAINE                                    SUPERIOR COURT
WASHINGTON, ss                                    DOCKET NO. CV-03-026

EAH-WAS-5/18/6 cov

PATRICIA RUTH BEAL                      )
                    Plaintiff           )
                                        )
                                        )
                                        )
vs                                      )          ORDER ON MOTION
                                        )
                                        )
                                        )
ALLSTATE INSURANCE CO.                  )
                    Defendant           )          DONALD L. GARBRECHT
                                                        LAW LIBRARY

MAY 21 2004

This matter is before the court on the Plaintiff's Motion for Partial Summary Judgment

pursuant to M.R.Civ.P. 56. The Plaintiff claims that she is entitled to compensation

according to the underinsured provisions of her motor vehicle insurance policy with

Allstate Insurance Co. (hereinafter the Defendant). Based on the doctrine of collateral

estoppel she requests the court to enter a Partial Summary Judgment barring the

Defendant from relitigating the amount of her damages that were previously determined

in a related arbitration proceeding.

**Background**

The undisputed facts establish that the Plaintiff incurred injuries as the result of an

automobile accident on July 22, 1994 in Yarmouth, Maine. Plaintiff brought a lawsuit

against the driver of the other vehicle, Toby Prosky. *See* Beal a/k/a Alley v. Prosky,

Washington County Superior Court, Docket No. CV-00-28 (**herein, "Prosky case"**).

At the time of the accident, Mr. Prosky was insured by The Defendant under a policy

with liability limits of $100,000/$300,000. Plaintiff was a passenger in her parent's car at the time of the accident; the car was covered by a Maine Bonding policy with UM coverage of $100,000/$300,000.[1] At the time of the accident, the Plaintiff also had her own motor vehicle policy with the Defendant. Plaintiff's policy included uninsured motorist (UM) coverage of $50,000/$100,000 and medical benefit payments of $5000.

Although it appears that the Defendant was not a named party to the prior Prosky suit, it defended its insured by obtaining counsel for Mr. Prosky. The Plaintiff and Mr. Prosky agreed to submit the case to binding arbitration by written agreement dated May 7, 2002.[2] The Arbitration Agreement contained a "high-low" provision, which provided that any award less than $60,000 would be increased to $60,000, and any award greater than $100,000 would be reduced to $100,000. The parties decided not to inform the arbitrator of this aspect of their agreement. The arbitration agreement also reflected the parties' agreement that Mr. Prosky was liable for the accident. In a detailed decision, the arbitrator awarded Plaintiff damages of $135,000. Pursuant to the high-low provision in the Arbitration Agreement, the award was reduced to $100,000. The Defendant promptly

---

[1] Plaintiff's Motion is for Partial Summary Judgment only. The central issue to be addressed by this Court is whether as a matter of collateral estoppel, the Defendant is barred from contesting the amount of damages Plaintiff incurred as previously determined in an arbitration hearing. The remaining issue will later require the determination of whether the Defendant has an exposure as an excess insurer triggering the policy coverage at issue.

[2] The Defendant points out to the Court that Plaintiff does not specifically claim that The Defendant should also be estopped from contesting liability, and The Defendant seems to imply that the issue of liability has yet to be resolved. *See* The Defendant's Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment, p. 3, n. 1. The Court notes however, that the liability of Mr. Prosky has been addressed by the parties' Arbitration Agreement, which states: *"[l]iability on the part of Toby N. Prosky for the above accident is agreed."* See Arbitration Agreement, dated May 7, 2002, provision 2 (emphasis added). "Written stipulations made in a prior proceeding for the purpose of relieving a party from proving some fact are generally binding upon the parties in another proceeding concerning the same case." Sevigny v. City of Biddeford, 344 A.2d 34, 39 (Me., 1975) (citations omitted). Accordingly, the liability of the accident is not at issue; the parties have agreed that Mr. Prosky is liable.

2

paid this amount to the Plaintiff. The lawsuit was then resolved by a stipulation of dismissal.[3] Neither party filed a motion to either confirm or vacate the arbitrator's award.

Plaintiff has now brought a lawsuit against the Defendant seeking additional compensation pursuant to the UM coverage provision of her policy. In her Motion for Partial Summary Judgment, the Plaintiff argues that the Defendant is collaterally estopped from contesting the amount of the damages she incurred in the accident because the damage issue was previously litigated and determined in the prior arbitration hearing. The Defendant opposes the Plaintiff's motion and argues that because the arbitration award was simply paid and never confirmed by the court, it was not a valid final judgment for purposes of collateral estoppel. The Defendant also argues that the collateral estoppel factors identified in Hossler v. Barry, 403 A.2d 762 (Me. 1979) do not weigh in favor of employment of collateral estoppel in this case.

## Discussion

### A. Standard of Review.

A party is entitled to summary judgment when the record shows that there is no genuine issue as to any material fact and the party is entitled to judgment as a matter of law. M.R.Civ.P. 56(c). A material fact is one having the potential to affect the outcome of the suit. Burdzel v. Sobus, 2000 ME 84, ¶6; 750 A.2d 573 (citation omitted). A genuine issue exists when enough competing evidence of record exists to require a fact-

---

[3] The Arbitration Agreement, dated May 7, 2002, provision 9 states:

> The arbitration award may be filed with the Washington County Superior Court and shall become a judgment upon confirmation by the Court if not paid within fourteen (14) days of the arbitrator's decision. No interest may be added to the decision. However, if the award is not paid within 14 days from the date of the arbitrator's decision then at the end of the 14-day period post judgment interest shall begin to accrue as if on a Court judgment. *If the award is not reduced to judgment, the Plaintiff shall execute a release and stipulation of dismissal in favor of the Defendant.* (emphasis added).

finder to choose between competing versions of the truth at trial. Id. The Court will view the evidence in light most favorable to the non-moving party. Webb v. Hass, 1999 ME 74, ¶18, 728 A.2d 1261.

When a party tries to obtain summary judgment on collateral estoppel grounds based on an arbitration award, "[t] he party asserting preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment, and issue preclusion will apply only if it is quite clear that this requirement has been met." Postlewaite v. McGraw-Hill, Inc., 333 F.3d 42, 48-49 (2d. Cir. 2003) (*quoting* BBS Norwalk One, Inc. v. Raccolta, Inc., 117 F.3d 674, 677 (2d Cir. 1997); *see also* Macomber v. Macquinn-Tweedie, 2003 ME 121, ¶13, 834 A.2d 131. The party resisting collateral estoppel has the burden of demonstrating that it would be prejudiced if barred from relitigating a particular issue. *See* Van Houten v. Harco Construction, Inc., 655 A.2d 331, 333 (Me., 1995) (citations omitted).

## B. Collateral Estoppel

The doctrine of res judicata is a court-made collection of rules designed to ensure the same matter will not be litigated more than once. Macomber v. Macquinn-Tweedie, 2003 ME 121, ¶22, 834 A.2d 131. The doctrine has developed two separate components, issue preclusion (collateral estoppel) and claim preclusion. Id. Collateral estoppel prevents the relitigation of factual issues already decided. The doctrine of collateral estoppel may be invoked where:

     (1) the identical issue was decided in a prior adjudication;
     (2) there was a final judgment on the merits;
     (3) the party against whom the bar is asserted was a party or a party in privity with a party to the prior adjudication;[4] *and*

---

[4] The doctrine of mutuality of estoppel no longer governs the application of collateral estoppel in Maine Courts. Hossler, supra, 403 A.2d at 770 (holding, "[w]here no unfairness results, a party or privy to a first

4

> (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in the prior matter.

Id (*citing* Machias Savings Bank v. Ramsdell, 1997 ME 20, ¶11, 689 A.2d 595). In Hossler v. Barry, 403 A.2d 762, 769 (Me. 1979), the Law Court recognized several factors that the court should consider in determining whether a party had a fair opportunity and incentive in an earlier proceeding to present the same issue it wishes to litigate again in a subsequent proceeding,

> (1) the size of the claim;
> (2) the forum of the prior litigation;
> (3) whether the issue was a factual or legal one;
> (4) the foreseeability of future suits;
> (5) the extent of the previous litigation;
> (6) the availability of new evidence;
> (7) the experience of counsel;
> (8) indications of a compromise verdict; and
> (9) procedural opportunities available in the second suit that were unavailable in the first.

The Law Court held that the party resisting collateral estoppel has the burden of demonstrating (through the application of the above factors) that it would be prejudiced if barred from relitigating a particular issue. Hossler, supra, 403 A.2d at 769 (citations omitted). Where the four elements of the doctrine are satisfied and it is clear that no unfairness will result to the party being estopped, the Court may conclude that a prior adjudication precludes the relitigation of an issue in the case before it.

Collateral estoppel is an affirmative defense, but it can also be asserted offensively to support a motion for summary judgment. Mutual Fire Insurance Co. v. Richardson, 640 A.2d 205, 207 (Me. 1994). The "offensive" use of collateral estoppel occurs where a plaintiff seeks to foreclose a defendant from litigating an issue the

suit will be bound in subsequent litigation with third parties by issues necessarily decided in the prior cases.").

defendant has previously litigated unsuccessfully in another action. Hossler, supra, 403 A.2d at 769. In Maine, the use of collateral estoppel offensively is permitted on a case-by-case basis. Id (stating collateral estoppel is a "flexible doctrine meant to serve the interests of justice [,] not to subvert them [;]" therefore, collateral estoppel will not be applied if particularly unfair to the defendant). The purpose of collateral estoppel is to prevent harassing and repetitious litigation, to avoid inconsistent holdings, which lead to further litigation, and to give sanctity and finality to judgments. Id (citing Cianchette v. Verrier, 151 A.2d 502 (Me. 1959).

## C. The Effect of the Arbitration Award

In collateral proceedings, it is well settled that courts will apply collateral estoppel principals to arbitration awards. Postlewaite v. McGraw-Hill, 333 F.3d 42, 48 (2nd Cir. 2003) (citations omitted); see also Pujol v. Shearson/American Express, Inc., 829 F.2d 1201, 1206-07 (1st Cir. 1987) (stating when an arbitration award is final, it is entitled to res judicata effect); Gruntal & Co., Inc., v. Steinberg, 854 F.Supp. 324, 337 (U.S. Dist. N.J., 1994) (citing Khandhar v. Elfenbein, 943 F.2d 244, 247 (2d Cir. 1991) (applying the doctrine of issue preclusion to factual issues resolved by an earlier arbitration); Universal American Barge Corp. v. J-Chem, Inc., 946 F.2d 1131, 1137 (5th Cir. 1991) (same). These jurisdictions state that an arbitration award is conclusive on all parties as to all matters of fact and law submitted to the arbitrators because the award has the effect of a judgment of a court of last resort. CVN Group, Inc. v. Delgado, 95 S.W.3d 234, 238 (Tex., 2002).

In this case, the Defendant contends that collateral estoppel should not be applied because the arbitration award lacks *judicial confirmation*, an essential requirement for

application of the doctrine and its preclusive effect in subsequent litigation. In some jurisdictions the doctrine of collateral estoppel permits a court to treat previously litigated issues as conclusive determinations of fact if they were decided during arbitration, whether the award is confirmed or unconfirmed. *See e.g.,* M.J. Woods, Inc. v. Conopco, Inc., 271 F. Supp. 2d 576, 582 (S.D.N.Y. 2003) (*quoting* Jacobson v. Fireman's Fund Insurance Co., 111 F.3d 261, 267-68 (2d Cir. 1997) (holding collateral estoppel applies to issues involved in arbitration, assuming there has been a "final determination on the merits, notwithstanding a lack of confirmation award.")).

On the other hand, in assessing the preclusive effect of a state-law based arbitration award on a federal court matter, the federal courts appear to require an arbitration award to have received judicial confirmation for purposes of res judicata. *See* Wolf v. Gruntal & Co., Inc., 45 F.3d 524, 527, n.3 (1st Cir. 1995); *see also* McDoanld v. City of West Branch, 466 U.S. 284, 287-88, 80 L. Ed. 2d 302, 104 S. Ct. 1799 (1984) (holding an unconfirmed award in an arbitration proceeding brought pursuant to a collective bargaining agreement may be considered as evidence; however, the award does not preclude a later civil rights suit in federal court); *see also* Gruntal & Co., Inc. v. Steinberg, 854 F. Supp. 324, 338 (U.S. Dist. N.J., 1994) (holding that absent judicial confirmation, the prior arbitration award had no preclusive effect).[5]

This appears to be an issue of first impression in Maine. The Law Court has only addressed the issue regarding the confirmation of arbitration awards pursuant to 14 M.R.S.A. §5937 in the context of enforcing an arbitration award, not in the context of res

---

[5] It should be noted that the Court in Gruntal & Co., Inc. v. Steinberg, 854 F. Supp. 324 (U.S. Dist. N.J., 1994) relied on Leddy v. Standard Drywall, Inc., 875 F.2d 383, 385 (2nd. Cir. 1989), as support for its holding, but Leddy is no longer followed in the 2nd Circuit.

7

judicata. *See, e.g.,* HE Sargent, Inc. v. Town of Millinocket, 478 A.2d 683 (Me., 1984) (holding that an entry of judgment upon confirmation of an arbitration award serves the purpose of allowing the court to enforce the terms of an award made by an arbitration panel); *see also* 14 M.R.S.A. §5945 (permitting an appeal to be taken to the Law Court following an order by the Superior Court confirming or denying confirmation of an arbitration award).

The arbitration award at issue remains judicially unconfirmed. The relevant provision of 14 M.R.S.A. §5937 states:

> Upon application of a party, the court *shall* confirm an award, unless within the time limits hereinafter imposed grounds are urged for vacating, modifying, or correcting the award, in which case the court shall proceed as provided in sections 5938 and 5939.

The parties in the Prosky case did not reduce the arbitration award to Judgment pursuant to 14 M.R.S.A. §5937. However, the Defendant (on behalf of Prosky) did not contest the award. Rather, it paid the amount of damages pursuant to the parties' high-low provision in the Arbitration Agreement. The Defendant offered no reasons to oppose the arbitration award in the Prosky case, and in fact did not seek to modify, vacate or correct the award within the three-month limitation period as set forth in 14 M.R.S.A. §§'s 5938 and 5939 of the Maine Arbitration Act. The Defendant had the opportunity to contest the award and ask for the Court's review, but chose not to do so. Furthermore, the parties resolved the lawsuit by a stipulation for dismissal. Thus, it was not necessary for either party to file a motion to confirm the arbitrator's award because there was no need for enforcement of the award. Where there is no challenge to the arbitration award, upon request of a party, judicial confirmation is a simple pro forma act required by the

8

statute. It has no independent legal significance. Reducing an arbitration award to judgment lends the enforcement authority of the court to the party seeking enforcement. Accordingly, under the circumstances of this case, where the arbitration award has been paid, it is in all practical effect a final judgment beyond dispute. Accordingly, the court concludes that there is no reason why this Court should not treat issues decided during this arbitration as conclusive, notwithstanding that the arbitration award was never formally judicially confirmed.

## D. Application of Collateral Estoppel to the Issues Litigated During the Arbitration

Here, the essential and material facts are undisputed. The question presented is a legal one; whether the doctrine of collateral estoppel should be applied under the facts presented. The court concludes that it should.

First, there is no doubt that the factual issue of damages Plaintiff incurred, which is now before this Court, was litigated and decided in the prior arbitration proceeding. *See* Arbitration Decision, dated June 21, 2002, which is attached as Plaintiff's Exhibit A.

Second, as discussed <u>supra</u>, the unconfirmed arbitration award, in which the arbitrator determined that the Plaintiff suffered damages in the amount of $135,000.00, is a valid final judgment for purposes of collateral estoppel.

Third, the Defendant is in privity with the Plaintiff as its insured. Privity is said to exist between parties who adequately represent the same legal interest. *See* <u>Van Houten v. Harco Construction, Inc.</u>, 655 A.2d 331, 333 (Me. 1995); *see also* BLACK'S LAW DICTIONARY 1079 (5th ed. 1979) (defining privity as, "such an identification of interest of one person with another as to represent the same legal right."). Although not a party to

the Prosky litigation, the Defendant was the insurer for Prosky and paid for and participated in his defense. The Defendant chose Prosky's defense counsel who sought to show (albeit unsuccessfully) that Plaintiff did not occur any damages as a result of the accident, for which the parties agreed Prosky was liable.

Fourth, the Defendant had a full and fair opportunity to litigate the issue in question in that prior proceeding. While it may be true that there are procedural differences in presenting a case to a jury rather than to an arbitrator, the court perceives nothing in those differences that lead it to conclude that a different result would have obtained. The Law Court has recognized that "collateral estoppel is applicable to administrative proceedings, concluding that final adjudication in an administrative proceeding before a quasijudicial municipal body has the same preclusion effect as a final adjudication in a former court proceeding." Cline v. Maine Coast Nordic, 1999 ME 72,¶9, 728 A.2d 686,,688. Thus, although a lawyer might make different tactical or strategic decisions while presenting a case in one forum than he might make in presenting the same case in another forum, those procedural differences are not persuasive to the court in this case.

The Defendant has not argued that it was not afforded adequate discovery opportunity in connection with the arbitration proceeding, or that its opportunity to call witnesses and make legal and factual arguments in support of its position was compromised. Nor has the Defendant otherwise demonstrated how it was wrongly prejudiced in the arbitration proceedings or was prevented from presenting less than a full defense on the issue. That the Defendant might have proceeded differently in this case, does not mean that it would have obtained a different result. Thus the court concludes that the Defendant had a full and fair opportunity to litigate the damage issue in arbitration.

10

The court also concludes that the Defendant had the same incentive as it would have had in a court proceeding. The Defendant had a duty to defend Prosky, thus it clearly had an incentive to minimize the award of damages against its insured. In the court's view, it would have this same incentive to minimize damages even with a high-low agreement in place. The difference between a low award of $60,000 and a high award of $100,000 is significant. The court concludes that the Defendant was afforded a full and fair opportunity to litigate the issue of damages at the arbitration hearing and that it had a strong incentive to do so.

## Conclusion

The Court finds no unfairness or injustice in estopping The Defendant from relitigating the issue of Plaintiff's damages. The court is also mindful that if The Defendant is allowed to try the issue of damages before two different triers of fact, the possibility of inconsistent judgments exists. The court also believes that according finality to the arbitration determination on this issue ultimately promotes the goals and objectives of the Alternative Dispute Resolution process. Accordingly, the court concludes that law and policy dictate that the Defendant be collaterally estopped from relitigating the amount of damages.

The Entry shall be: The Plaintiff's Motion for Summary Judgment is granted. Pursuant to M.R.Civ. P. 79(a) the clerk is directed to inter this judgment in the docket by reference.

Date: May 18, 2004

_____
JUSTICE, SUPERIOR COURT

# FILED

MAY 18 2004

MARILYN E. BRALEY Clerk                    11

PATRICIA RUTH BEAL  - PLAINTIFF
P O BOX 148
BEALS ME 04611
Attorney for: PATRICIA RUTH BEAL
ARTHUR GREIF
GILBERT & GREIF
82 COLUMBIA ST
PO BOX 2339
BANGOR ME 04402-2339


vs
ALLSTATE INSURANCE CO - DEFENDANT
P O BOX 9738
PORTLAND ME 04104
Attorney for: ALLSTATE INSURANCE CO
J WILLIAM DRUARY JR
MARDEN DUBORD ET AL
PO BOX 708
44 ELM STREET
WATERVILLE ME 04901-0708

SUPERIOR COURT
WASHINGTON, ss.
Docket No  MACSC-CV-2003-00026


**DOCKET RECORD**