IN RE JOSEPH W., JR., ET AL.*
(AC 35555)
(AC 35574)

Lavine, Alvord and Peters, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued September 10—officially released October 9, 2013**

** October 9, 2013, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*David J. Reich*, for the appellant in AC 35555 (respondent father).

*David B. Rozwaski*, for the appellant in AC 35574 (respondent mother).

*Stephen G. Vitelli*, assistant attorney general, with whom, on the brief, was *George Jepsen*, attorney general, for the appellee in both cases (petitioner).

*Geraldine M. Menn*, for the minor children in both cases.

*Opinion*

PER CURIAM. The respondent, Karin H. (mother), and the respondent, Joseph W., Sr. (father), each appeal from the judgments rendered in favor of the petitioner, the Commissioner of Children and Families (commissioner), in which the trial court found that the respondents' minor children, Joseph W., Jr., and Daniel W. (children), were neglected, and then terminated the respondents' parental rights with respect to both children. In AC 35555, the father claims that the evidence as to him was insufficient for the court to find that both children were neglected under the doctrine of predictive neglect. In AC 35574, the mother claims that the court improperly (1) denied her request for relief under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 et seq., (2) rendered adjudications of neglect as to both children, and (3) granted the petitions to terminate her parental rights. We affirm the judgments of the trial court.

The following is a brief summary of the facts and procedural history of this matter. The Department of Children and Families (department) has been involved with the mother since 2002, when her daughter, who

is not this father's child, was born and subsequently removed from the mother's custody by the commissioner. In 2005, the respondents' son, Joseph W., Jr. (Joseph), was born. Within three days, the commissioner filed an ex parte motion for an order of temporary custody, which was granted, and a neglect petition. After a contested hearing, the court, *C. Taylor, J.*, sustained the temporary custody order, and Joseph was placed in a foster home. The respondents' second son, Daniel W. (Daniel), was born in 2006, and the commissioner filed an ex parte motion for an order of temporary custody, which was granted, and a neglect petition a few days following his birth. After scheduling a contested hearing on the order of temporary custody, the court, *Bear, J.*, sustained the order by agreement of the parties. Daniel was placed in the same foster home as Joseph.

The first trial on the neglect petitions was held on August 2, 2007. The mother pleaded nolo contendere, but the father did not enter a plea. No evidence was presented, and the court, *Wilson, J.*, rendered adjudications of neglect for both children and committed them to the custody of the commissioner. Thereafter, the commissioner filed petitions to terminate the respondents' parental rights with respect to both children and, following a trial, the court, *Olear, J.*, granted the petitions. The respondents appealed from the judgments to this court, which reversed the judgments of the trial court. See *In re Joseph W.*, 121 Conn. App. 605, 997 A.2d 512 (2010). Ultimately, our Supreme Court affirmed the judgment of this court and concluded that the judgments of the trial court should be reversed because the father improperly had been prevented from entering a plea at the neglect proceeding. The Supreme Court determined that the adjudications of neglect, on which the judgments terminating the respondents' parental rights had been predicated, had to be opened. *In re Joseph W.*, 301 Conn. 245, 267, 21 A.3d 723 (2011).

Shortly before the second trial on the neglect petitions for both children, the respondents sent a letter to the trial court in which they stated that they believed their rights under the ADA had been violated by the department. In that letter, they requested that the department provide an ADA coordinator to oversee the case. On the first day of trial, the court, *Bentivegna, J.*, denied the request and proceeded with the trial. When the trial concluded, the court found by a fair preponderance of the evidence that both children were neglected under the doctrine of predictive neglect and committed the children to the care and custody of the commissioner. The respondents filed separate appeals from the adjudications of neglect. Our Supreme Court, although concluding that the trial court properly rejected the respondents' ADA claims, reversed the judgments. *In re Joseph W.*, 305 Conn. 633, 46 A.3d 59 (2012). The Supreme Court held that the trial court applied an improper standard of proof when it determined that the children were neglected under the doctrine of predictive neglect.[1] Id., 646–48. The case was remanded to the trial court for a new trial.[2]

[1] The Supreme Court held: "We conclude, therefore, that the trial court must find that it is more likely than not that, if the child remained in the current situation, the child would be 'denied proper care and attention, physically, educationally, emotionally or morally'; General Statutes (Rev. to 2011) § 46b-120 (8) (B); or would be 'permitted to live under conditions, circumstances or associations injurious to the well-being of the child or youth . . . .' General Statutes (Rev. to 2011) § 46b-120 (8) (C) . . . .

"We further conclude that, in neglect proceedings involving the doctrine of predictive neglect, the petitioner is required to meet this standard with respect to *each parent* who has contested the neglect petition and who has expressed a desire, or at least a willingness, to care for the child independently of the other parent. . . . If the parents have indicated that they intend to care for the child jointly, however, or if the trial court discredits a parent's claim that he or she intends to care for the child independently, the trial court may treat the parents as a single unit in determining whether the petitioner has met its burden of proving predictive neglect." (Citations omitted; emphasis in original.) *In re Joseph W.*, supra, 305 Conn. 646–48.

[2] While the respondents' appeals were pending in the Supreme Court, the trial court, *Bentivegna, J.*, terminated the respondents' parental rights as to both children following a contested trial. After the Supreme Court reversed

On August 21, 2012, the commissioner filed a motion to consolidate the trial of the neglect and termination petitions. The court, *Epstein, J.*, granted the motion on September 14, 2012. On December 3, 2012, which was the first day of trial, the father and the mother each filed a written statement requesting that ADA coordinators for the department and the judicial branch be present throughout the court proceedings. After hearing the parties' arguments regarding these requests, the court, *Keller, J.*, denied both requests because (1) the ADA claims previously had been raised and our Supreme Court concluded that alleged ADA violations are not a defense in child protection proceedings, and (2) the requests were not timely filed with the court.[3]

During the six day trial, the court heard testimony from fourteen witnesses. Neither the mother, who attended only the first day of trial,[4] nor the father testified. Dozens of exhibits were submitted to the court and, additionally, the court took judicial notice of court memoranda of previous hearings and court orders with respect to the children, including all specific steps, and the filing dates and allegations in the various pleadings. Additionally, the court took judicial notice of written and transcribed decisions pertaining to the mother's daughter, which included the neglect proceeding and the subsequent termination of parental rights proceeding.

Following the trial, the court, in its 182 page memorandum of decision, stated that it had "fully considered

the adjudications of neglect, the respondents filed motions to vacate the judgments terminating their parental rights. Those motions were granted by the trial court, *Upson, J.*, in August, 2012.

[3] The court noted that the case management order required that all motions had to be filed at least two weeks prior to the date of trial.

[4] In its memorandum of decision, the court stated that the trial dates had been selected well before the commencement of trial and that the mother did not provide the court or her attorney with any reason for her absence.

the criteria set forth in the relevant statutes, as well as the credible and relevant evidence, applicable case law, demeanor and credibility of the witnesses and arguments of the parties in reaching the decisions reflected and the orders issued in this memorandum." The court adjudicated the children neglected and granted the petitions to terminate the respondents' parental rights as to both children. These appeals followed.

## I

## AC 35555

The father claims that the evidence was insufficient for the court to find both children neglected under the doctrine of predictive neglect. Specifically, he argues that he expressed a willingness to care for the children independently from the mother. He claims that if the court had made that finding, the evidence at trial was "insufficient to show that it 'was more likely than not that, if [each] child remained in the current situation, [that] child would be [neglected as alleged in the petition].' " We disagree.

The record fully supports the court's finding that the respondents presented as a single parental unit as of July 21, 2005, which was the adjudicatory date established in Joseph's neglect petition. The court recited several instances in its memorandum of decision that reflected the respondents' intent to raise their son jointly. With respect to Daniel, the court found that the evidence showed that they still were living together at the time of Daniel's birth and that "[n]either parent expressed a credible willingness or desire to separate from the other and raise Daniel independently." Of particular significance is the court's finding that even if either of the parents had indicated a willingness to parent independently, the court would have reached the same determination as to predictive neglect. Again,

the court's memorandum of decision contains ample support for these determinations.

Although the father disputes the court's findings, our thorough examination of the record and the arguments advanced on appeal leads us to conclude that he has not demonstrated any error that undermines the court's judgment. The father's claims were analyzed and resolved properly in the court's complete and well reasoned memorandum of decision. See *In re Joseph W.*, 53 Conn. Supp. 1, 79 A.3d 155 (2013). We adopt that decision as the proper statement of the relevant facts, issues and applicable law, as it would serve no useful purpose for us to repeat the discussion contained therein. See, e.g., *In re Mariah P.*, 109 Conn. App. 53, 55, 949 A.2d 1292, cert. denied, 289 Conn. 946, 959 A.2d 1012 (2008).

II

AC 35574

A

The mother's first claim is that the court improperly denied her request for relief under the ADA. Although she had insisted that ADA coordinators for the department and the judicial branch be present throughout the court proceedings,[5] the court responded that the ADA did not provide a defense to neglect and termination proceedings. Referring to our Supreme Court's decision in *In re Joseph W.*, supra, 305 Conn. 633, the court denied the mother's request.

---

[5] In her appellate brief, the mother additionally claims that an ADA coordinator should have participated at the reunification stage to assist her in "obtaining specific programs [that] would have been suitable for a person with a psychiatric disability as is the case with [the mother]." The record discloses that the request for the ADA coordinator or representative was made by written request on the first day of trial and was directed only to the trial proceeding.

We agree with the trial court that this claim of the mother was raised and decided in *In re Joseph W.*, supra, 305 Conn. 650–53. The mother claimed in *In re Joseph W.*, as she claims in this appeal, that she is not asserting the alleged ADA violations as a defense, but rather as an affirmative claim that the department did not make reasonable efforts at reunification because it failed to make arrangements for her to have an ADA coordinator to assist her with the children. Our Supreme Court held: "Because she has failed to provide the court with any provision, either in the federal statute itself or under relevant state law, demonstrating that a violation of a parent's rights under the ADA can be the basis for an appeal from an adjudication of neglect, we reject her claims on appeal." Id., 652. We are bound by our Supreme Court's holding; the mother's ADA claim is without merit.

B

The mother's second claim is that the court improperly rendered adjudications of neglect with respect to both children. Specifically, she argues: "The [mother] concedes that with respect to her case, there was a sufficient basis for an adjudication of neglect, however, she maintains that there was not a sufficient basis for neglect for the [father] and, as such, the trial court erred in its findings of neglect which would necessitate vacating the trial court's order for termination of parental rights."

We already have determined in part I of this opinion that the record fully supports the court's findings that both children were neglected under the doctrine of predictive neglect. That determination, according to the court, applied whether the children were to be parented by the respondents together or whether they were to be parented independently by *either* respondent. Again, we refer to the trial court's detailed and thoughtful

decision for a discussion of the evidence that supports its findings and conclusions.

### C

The mother's final claim is that the court improperly granted the commissioner's petitions to terminate her parental rights as to both children. She argues that the department failed to make reasonable efforts toward reunification. In particular, the mother claims: "The [department's] failure to identify and implement appropriate services for the [mother] is tied in directly to the ADA claim that appropriate services were neither identified nor implemented to assist the [mother]."

This claim is addressed in part II A of this opinion. Our Supreme Court rejected this argument in *In re Joseph W.*, supra, 305 Conn. 650–53. Accordingly, the mother's claim fails.

The judgments are affirmed.