20-277

Joseph Watley, Karin Hasemann v. Department of Children and Families

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2020

(Argued: December 7, 2020          Decided: March 22, 2021)

Docket No. 20-277

_____

JOSEPH WATLEY, KARIN HASEMANN,

*Plaintiffs-Appellants*,

v.

DEPARTMENT OF CHILDREN AND FAMILIES, JOETTE KATZ, VANNESSA
DORANTES, COMMISSIONER OF THE DEPARTMENT OF CHILDREN AND
FAMILIES,

*Defendants- Appellees*.[1]

_____

Before: POOLER, PARKER, and LYNCH, *Circuit Judges*.

Appeal from the United States District Court for the District of

Connecticut's (Robert N. Chatigny, *J.*) dismissal of Joseph Watley and Karin

___

[1] The Clerk of Court is directed to amend the caption as above.

Hasemann's claims alleging violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-34, the Rehabilitation Act, 29 U.S.C. § 794, and the Due Process Clause of the Fourteenth Amendment pursuant to Section 1983. The district court held their claims were barred by the *Rooker-Feldman* doctrine, collateral estoppel, the statute of limitations, qualified immunity, and lack of standing. It also dismissed some claims for failure to state a claim. Because plaintiffs' claims require relitigation of issues already resolved by Connecticut state courts, we affirm the district court's dismissal of their complaint.

Affirmed.

_____

DAN BARRETT, ACLU Foundation of Connecticut (Elana Bildner, *on the brief*), Hartford, CT, *for Plaintiffs-Appellants Joseph Watley and Karin Hasemann.*

JANE R. ROSENBERG, Assistant Attorney General (Alayna Stone, Assistant Attorney General, Clare Kindall, Solicitor General, *on the brief*) *for* William Tong, Attorney General of the State of Connecticut, Hartford, CT, *for Defendants-Appellees Department of Children and Families, Joette Katz, and Vannessa Dorantes.*

Audra J. Soloway, Paul, Weiss, Rifkind, Wharton & Garrison LLP (Robert N. Kravitz, *on the brief*), New York, NY, *for Amici Curiae Brooklyn Defender Services, Bronx Defenders, Center for Family Representation,*

*Connecticut Division of Public Defender Services, Civil Rights Education and Enforcement Center, Disability Rights Advocates, Legal Assistance of Western New York, Sarah H. Lorr, Neighborhood Defender Services, New York University School of Law Family Defense Clinic, Office of Monroe County Public Defender, Robyn M. Powell, and the Vermont Parent Representation Center in Support of Plaintiffs-Appellants Joseph Watley and Karin Hasemann.*

POOLER, *Circuit Judge*:

This case involves a serious and complicated eleven-year history of child custody disputes in Connecticut state courts. Karin Hasemann and Joseph Watley appeal from the U.S. District Court for the District of Connecticut's (Robert N. Chatigny, *J.*) dismissal of their claims alleging that Connecticut's Department of Children and Families ("DCF"), its former Commissioner Joette Katz, and its current Commissioner Vannessa Dorantes, terminated their parental rights in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-34, the Rehabilitation Act ("RA"), 29 U.S.C. § 794, and the Due Process Clause of the Fourteenth Amendment pursuant to Section 1983, 42 U.S.C. § 1983, as well as the dismissal of their request for injunctive relief. They argue that the issues of whether DCF complied with the ADA and RA and whether DCF made reasonable efforts to reunify them with their children are not identical

3

to the issues litigated in state court, and that the issue of DCF's compliance with the ADA and RA was not actually litigated.

We disagree. Under both federal and Connecticut law, the issue at the core of the parties' dispute is whether DCF reasonably accommodated Hasemann and Watley's actual or perceived disabilities in providing services and programs to assist their reunification with their children. This issue was actually litigated and necessarily determined by Connecticut courts. The district court correctly granted DCF's motion to dismiss on collateral estoppel grounds.

## BACKGROUND

**I.    Factual History**

Hasemann is Kristina's biological mother. Hasemann and Watley are the biological parents of Joseph Jr. and Daniel. *Watley v. Dep't of Child. & Families*, No. 3:13-cv-1858, 2019 WL 7067043, at *3 (D. Conn. Dec. 23, 2019). DCF is the Connecticut agency responsible for responding to reports of child abuse and neglect. *Id.*

Hasemann "suffers from severe narcolepsy" and alleges that "DCF . . . contends" that she suffers from an attention deficit hyperactivity disorder, major depression, a schizotypal personality disorder, and an antisocial personality

4

disorder. App'x at 17-18. Narcolepsy is a "chronic neurological disorder caused by the brain's inability to regulate sleep-wake cycles" that can cause "excessive daytime sleepiness . . . vivid hallucinations during sleep onset or upon awakening, and brief episodes of total paralysis." Nat'l Inst. of Neurological Disorders and Stroke, *Narcolepsy Information Page*, https://www.ninds.nih.gov/Disorders/All-Disorders/Narcolepsy-Information-Page (last modified Mar. 27, 2019). Watley is disabled from a spinal injury and alleges that DCF contends that he suffers from a personality disorder.

Between 2002 and 2013, DCF pursued neglect proceedings, and later sought to terminate Hasemann's parental rights. DCF first became involved with Hasemann in October 2002, when Hasemann gave birth to Kristina. The hospital contacted DCF after Hasemann "insisted [Kristina] was a boy, [that Kristina] had a heart attack, and [that Kristina] should be fed in an unusual and inappropriate pattern even though the food intake for [Kristina, a] premature baby was crucial." *Watley*, 2019 WL 7067043, at *4 (alterations and internal quotation marks omitted). DCF invoked an emergency 96-hour hold pursuant to Section 17a-101g(e) and (f) of Connecticut's general statutes, authorizing it to remove a child without parental consent if it has probable cause to believe the child is in

5

imminent risk of physical harm and immediate removal is necessary to ensure the child's safety. DCF also filed a petition for neglect in state court. In state court, DCF sought and received an order of temporary custody.

Pursuant to Section 46b-129 of Connecticut's general statutes, the state court issued preliminary steps Hasemann needed to follow to regain custody of Kristina. These steps included, among other things: keeping all appointments set by or with DCF, participating in counseling and making progress toward identified treatment goals, cooperating with court-ordered evaluations and testing, signing releases authorizing DCF to communicate with services providers, and visiting the children as often as DCF permits. In 2004, the court adjudicated Kristina as neglected and sometime thereafter, DCF filed a termination of parental rights petition. In 2007, the state court terminated Hasemann's parental rights to Kristina after a trial.

After Hasemann and Watley had Joseph Jr. in July 2005 and Daniel in July 2006, DCF filed petitions in state court alleging neglect based on a theory of predictive neglect. Predictive neglect allows a court to terminate a parent's rights if it is "more likely than not" that the child under their care will be "denied proper care and attention physically, educationally, emotionally, or morally."

6

*Watley*, 2019 WL 7067043, at *4 (internal quotation marks omitted). Some academic scholars criticize the predictive neglect theory as "effectively discriminatory and severely disadvantageous for parents with psychiatric disabilities." *Id.* n.8 (citation omitted).

Joseph Jr. was born in Pennsylvania and Pennsylvania authorities removed him from Hasemann and Watley's custody due to Hasemann's "bizarre" behavior. *In re Joseph W., Jr.*, 53 Conn. Supp. 1, 35-36 (Conn. Sup. Ct. 2013), *aff'd*, 146 Conn. App. 468 (Conn. App. Ct. 2013), *cert. denied*, 310 Conn. 950 (Conn. 2013) (hereinafter, "the 2013 Decision"). Hasemann provided inaccurate information regarding her financial status and housing, indicating that she was building a mansion in Alabama and had secured a pediatrician there, which the alleged pediatrician denied. This led Pennsylvania authorities to secure an emergency protective custody order from a Pennsylvania court. Because Hasemann and Watley are Connecticut residents, the order indicated that Connecticut would assume custody once a Connecticut state court entered a custody order. DCF then took custody of Joseph Jr. pursuant to a state court order and the court set specific steps for Hasemann and Watley to follow in order to regain custody.

7

Daniel was born in Connecticut and removed by DCF under a 96-hour hold. After DCF moved for a temporary custody order and the court scheduled a contested hearing, Hasemann and Watley consented to DCF maintaining temporary custody.

In December 2007, DCF filed termination of parental rights petitions for Joseph Jr. and Daniel. The state court terminated Hasemann and Watley's parental rights after a trial in October 2008. Connecticut's appellate court reversed because Watley "had not been given an adequate opportunity to contest a finding of neglect." *Watley*, 2019 WL 7067043, at *5 (citation omitted). In 2011, the Connecticut Supreme Court affirmed the appellate court's decision and remanded the case for a new trial. On remand, the trial court conducted a second trial and again terminated Hasemann and Watley's parental rights. This judgment was also reversed on appeal. The Connecticut Supreme Court again remanded for a new trial, holding that the trial court applied the wrong standard of proof for determining predictive neglect. The trial court held a third trial in December 2012 in which it again terminated Hasemann and Watley's parental rights (the "2013 Decision"). The appellate court affirmed this decision, and Connecticut's Supreme Court denied certiorari.

8

Hasemann and Watley's actual or perceived disabilities were at issue during each of the state court proceedings. Hasemann and Watley "denied having any disability and resisted having to cooperate with DCF and comply with court-ordered specific steps," *Watley*, 2019 WL 7067043, at \*2, but they nevertheless requested an ADA coordinator's presence, which the state trial court denied. *Id.* On appeal from the second termination order, the Connecticut Supreme Court ruled that "ADA violations are not a defense to neglect or termination proceedings, and that there is no authority for the proposition that the ADA requires trial courts to provide disabled parents with ADA coordinators . . . because the ADA does not create special obligations in either termination or neglect proceedings." *In re Joseph W.*, 53 Conn. Supp. at 11 (citing *In re Joseph W., Jr.*, 305 Conn. 633, 650 (Conn. 2012)).

The 2013 Decision notes several findings by the trial court related to Hasemann's actual or perceived disabilities, including that:

- "[a]lthough [DCF] referred [Hasemann] to multiple resources and providers from November 2002 until the trial on the termination petition in January 2007 regarding Kristina, [Hasemann] did not successfully engage in individual counseling," *In re Joseph W.*, 53 Conn. Supp. at 29;

- "[d]espite numerous prior assessments and evaluations of [Hasemann's] mental health issues, [DCF] continued to seek further advice on the nature

of treatment that would best address [Hasemann's] disorder and her reluctance to obtain treatment," *id.* at 42-43;

- "[a]s of the date trial commenced on December 3, 2012, there was no information provided to [DCF] by [Hasemann] as to her engagement in narcolepsy treatment, treatment for ADHD, mental health services or a parenting program, all part of her required specific steps," *id.* at 76-77, and;

- "[Watley] made repeated efforts to prevent [Hasemann] from responding to [DCF] inquires," *id.* at 95.

Importantly, in the 2013 Decision, the state trial court determined that "[DCF] has proven by clear and convincing evidence that as of December 10, 2007, the adjudicatory date of the termination petitions, [DCF] made reasonable efforts to reunify [Hasemann] and [Watley] with Joseph and Daniel." *Id.* at 232. It described DCF's efforts to reunify Hasemann and Watley with their children as "extraordinary" in "certain respects." *Id.* at 233. When Hasemann and Watley appealed the trial court's decision to Connecticut's appellate court, arguing in part that the court improperly denied their request for relief under the ADA for their claim that DCF did not make reasonable efforts at reunification because it failed to have an ADA coordinator present, the appellate court affirmed. It held that the ADA claim was "without merit" because Hasemann "has failed to provide the court with any provision, either in the federal statute itself or under

10

relevant state law, demonstrating that a violation of a parent's rights under the ADA can be the basis for an appeal from an adjudication of neglect." *In re Joseph W., Jr.*, 146 Conn. App. 468, 476 (Conn. App. Ct. 2013).

Hasemann and Watley have ended their relationship but both individually "presently care for children" and "plan to continue to care for children and either have or adopt a child." App'x at 30.

**II.     Proceedings in District Court**

Hasemann and Watley filed a pro se complaint on December 13, 2013 in the United States District Court for the District of Connecticut alleging that DCF, Katz, Connecticut's judicial branch, and Connecticut Superior Court Judge Christine Keller violated Title II of the ADA and Section 504 of the RA. They also filed a motion for a temporary restraining order enjoining DCF from placing their sons in permanent adoption and motions for appointment of counsel. On December 27, 2013, the district court denied Hasemann and Watley's motion for a temporary restraining order and *sua sponte* dismissed their complaint. The district court held that it lacked subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine and that alternatively, Hasemann and Watley's claims were barred by res judicata. It also denied their motions for appointment of

11

counsel in a subsequent order. Hasemann and Watley appealed. This Court vacated and remanded to the district court, concluding that "[w]hile it may ultimately be the case that the court lacks jurisdiction or that the complaint lacks merit, it is not 'unmistakably clear' that that is so." *Watley v. Katz*, 631 F. App'x 74, 76 (2d Cir. 2016).

Hasemann and Watley, now represented by counsel, filed an amended complaint in June 2016. Their amended complaint sought damages for emotional distress and injunctive relief, alleging: (1) intentional discrimination in violation of Title II of the ADA and the RA based on their disability or perceived disability, (2) intentional discrimination under the ADA and RA against Watley based on his relationship and association with Hasemann based on her disability or perceived disability, (3) retaliation under the ADA and RA, and (4) violation of the First, Ninth, and Fourteenth Amendments to the U.S. Constitution.

DCF moved to dismiss the amended complaint, arguing that Hasemann and Watley's claims for damages were barred by the *Rooker-Feldman* doctrine, collateral estoppel, the statute of limitations, sovereign immunity, and qualified immunity. It also argued that Hasemann and Watley lacked standing to seek injunctive relief. In December 2019, the district court granted DCF's motion. The

district court concluded that Hasemann and Watley's claims were issue precluded because "in substance . . . the state courts determined that reunification would pose a significant risk to the health or safety of the children and that the risk could not be eliminated by a reasonable modification." *Watley*, 2019 WL 7067043, at *11 (citation omitted). The district court invoked the "direct threat" exception to the ADA and RA, which provides that ADA-covered entities are not required "to permit an individual to participate in or benefit from" their programs or services if it would pose a "direct threat to the health or safety of others." *Id.* (quoting 28 C.F.R. § 35.139(a)). Because the ADA defines a direct threat as "a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures or by the provision of auxiliary aids or services," the district court reasoned that a rejection of the direct threat defense would require it to reject the state trial court's findings of fact in the 2013 Decision. *Id.* at *11-12 (quoting 42 U.S.C. § 12182(b)(3)).

The district court rejected Hasemann and Watley's argument that the issue of DCF's compliance with the ADA and RA was not actually litigated because the state court did not conclusively decide that DCF's actions were reasonable

13

under the ADA. It found that the state courts acknowledged DCF had to take Hasemann and Watley's mental condition into consideration when determining whether DCF exercised reasonable efforts to reunite them with their children. Second, the trial court had expressly found, in a decision vacated by the state appellate court on other grounds, that "[b]ased on the law and the facts . . . the ADA has not been violated. . . . Under the particular circumstances of this case, [DCF] made reasonable efforts even considering any ADA related issues. The respondents were not discriminated against under the ADA." *Id.* at *12 (citation omitted). Third, the district court carefully parsed each of Hasemann and Watley's allegations that DCF failed to provide reasonable accommodations, such as by refusing to consider placement with their family members and failing to provide meaningful visitation opportunities, and found that each of the allegations conflicted with the trial court's findings in the 2013 Decision.

Hasemann and Watley timely appealed. They do not challenge the dismissal of their retaliation and constitutional claims, and have thus abandoned those claims. *See United States v. Kirsch*, 903 F.3d 213, 221 n. 9 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 1272 (2019).

14

**DISCUSSION**

We review a district court's ruling on issue preclusion de novo, affording state court judgments "the same preclusive effect those judgments would have in the courts of the rendering state" under the Full Faith and Credit Act, 28 U.S.C. § 1738. *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 93 (2d Cir. 2005).

Under Connecticut law, an issue is precluded when it was "actually litigated and necessarily determined in a prior action between the same parties upon a different claim." *Lyon v. Jones*, 291 Conn. 384, 406 (Conn. 2009). "[T]he prior litigation must have resolved the same legal or factual issue that is present in the second litigation." *Corcoran v. Dep't of Social Servs.*, 271 Conn. 679, 690 (Conn. 2004) (italics omitted). The party asserting issue preclusion bears the burden of proving with clarity the issue determined by the prior judgment. *See Postlewaite v. McGraw-Hill*, 333 F.3d 42, 49 (2d Cir. 2003). "[T]he linchpin of collateral estoppel is the identity of the issues decided by both tribunals." *Corcoran*, 271 Conn. at 691. An issue is actually litigated when it is "properly raised in the pleadings or otherwise, submitted for determination, and in fact determined." *Lyon*, 291 Conn. at 406. An issue is necessarily determined if a

15

"judgment could not have been validly rendered" in the "absence of a determination of the issue." *Id.*

We turn to the two standards at issue: Connecticut's reasonable efforts standard and the ADA's reasonable accommodations standard. Under Connecticut law, a parent's rights may be terminated if a court finds that (1) DCF made "reasonable efforts" to reunify the parent and child, (2) termination is in the child's best interest, and (3) a statutory termination ground such as neglect is present. *In re Joseph W.*, 53 Conn. Supp. at 141-42. "Reasonable efforts" means "doing everything reasonable, not everything possible" and the standard considers efforts "designed and intended to assist the parent in overcoming the applicable statutory grounds for termination." *In re Unique R.*, 170 Conn. App. 833, 853, 855 (Conn. App. Ct. 2017). Though Connecticut courts do not consider alleged violations of the ADA and RA as defenses in child custody proceedings, DCF must "take into consideration [a parent's] mental condition when determining what 'reasonable efforts' to make at reunification." *In re Antony B.*, 54 Conn. App. 463, 475 (Conn. App. 1999).

To establish a prima facie violation under the ADA and Rehabilitation Act, a plaintiff must show that "1) he is a qualified individual with a disability; 2)

16

[DCF] is an entity subject to the acts; and 3) he was denied the opportunity to participate in or benefit from [DCF's] services, programs, or activities or [DCF] otherwise discriminated against him by reason of his disability." *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016). A "reasonable accommodation" gives meaningful access to participate or benefit from services. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 282 (2d Cir. 2003).

We agree with the district court that Hasemann and Watley's claims are issue precluded. While the district court partially relied on the direct threat exception to the ADA, it also carefully examined each of Hasemann and Watley's allegations and compared them with the trial court's findings. In their amended complaint, Hasemann and Watley alleged that DCF failed to provide reasonable accommodations because it failed to identify appropriate tasks; failed to provide meaningful visitation opportunities; refused to allow Hasemann to treat with her preferred provider; refused to allow them to treat with providers near their homes; refused to consider the children's placement with their family members; and refused to provide an ADA coordinator. But, as the district court correctly concluded, the state court decided each of these issues. It held that the specific steps provided Hasemann and Watley with the tasks they needed to complete

17

for return of their children, that DCF complied with court orders that they receive more visitation, that DCF attempted to work with Hasemann's preferred provider but the provider did not cooperate, that both Hasemann and Watley stopped treating with any providers at all after 2007 and 2008, and that placement with Hasemann's family or Watley's family would not have been suitable. *See Watley*, 2019 WL 7067043, at *13 (citing *In re Joseph W.*, 53 Conn. Supp. at 75-77, 104, 116-17, 121, 145, 153-78, 159, 165, 169-70).

Further, on appeal, Connecticut's appellate court rejected the claim that DCF failed to engage in reasonable efforts to reunify Hasemann and Watley with Joseph Jr. and Daniel due to DCF's failure to provide an ADA coordinator. *See In re Joseph W., Jr.*, 146 Conn. App. at 475-76. The trial court had also concluded that DCF "did everything possible to properly assess [their] deficiencies and address them." *In re Joseph W.*, 53 Conn. Supp. at 185. Thus, the issue of whether DCF properly considered Hasemann and Watley's actual or perceived disabilities in its efforts to reunify them with the children, and therefore complied with the ADA and RA's requirement to provide reasonable accommodation, was litigated and was necessary to the state court's judgment terminating their parental rights.

18

Hasemann and Watley argue that the issues are not identical because, while the state court may consider a mental condition in the reasonable efforts inquiry, there are no standards governing what would make services effective for ADA and RA purposes. Amici curiae similarly contend that the state court's actual inquiry was limited to assessing whether mental health professionals could address Hasemann and Watley's specific circumstances, and not whether the communications or services were appropriately modified to address their disabilities. But Connecticut's collateral estoppel doctrine does not require that specific standards govern an issue for the issue to be identical to another. Instead, prior litigation need only have dealt with the same legal or factual issues. *See Corcoran*, 271 Conn. at 690. Amici curiae further contend that the state court's denial of Hasemann and Watley's request for an ADA coordinator to be present during the state court proceedings did not consider whether the ADA imposed an obligation on DCF to do so. But this defines the issues too narrowly—the only fact that matters for issue preclusion purposes is that the state court denied Hasemann and Watley's request for an ADA coordinator.

We are mindful of the substantial difficulties that parents with actual or perceived disabilities may encounter while seeking to reunify with their children.

19

We in no way wish to minimize these difficulties and the very serious nature of this case. We conclude only that the Full Faith and Credit Clause requires us to follow the judgment of the state court where an issue was actually litigated and necessarily determined under Connecticut law. That is the case here. When the state court terminated Hasemann and Watley's parental rights to Joseph Jr. and Daniel, it determined that DCF made reasonable efforts to reunite Hasemann and Watley with Joseph Jr. and Daniel while considering their specific characteristics, including their actual or perceived disabilities. The state court's determination that DCF made reasonable efforts to reunify Hasemann and Watley with the children bars consideration of Hasemann and Watley's claims in their amended complaint that DCF violated the ADA and RA by allegedly failing to provide specific services or accommodate specific requests.

## CONCLUSION

For the reasons given above, the judgment of the district court is affirmed. We need not reach the merits of the parties' arguments regarding the *Rooker-Feldman* doctrine, Connecticut's statute of limitations, or Hasemann and Watley's standing to seek prospective injunctive relief.

20